[No. 28051-1-I.   Division One.   June 28, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN L. SUMMERS, *Appellant.*

*Irene Tanabe* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *John L. Belatti, Deputy,* for respondent.

FORREST, J. — John L. Summers appeals his conviction of one count of second degree rape and sentence of 27 months claiming: (1) expert testimony was required to establish the existence of the victim's mental incapacity and the causation between mental incapacity and the lack of understanding of the sexual acts, (2) the evidence was insufficient to support the conviction, and (3) the trial court erred in excluding testimony of the victim's past sexual behavior. We affirm.

At the time of the incident, the victim, L.L., was 44 years old and resided at Century House, a congregate care facility for the mentally ill located in Auburn. On June 24, 1989, L.L. and another resident of Century House, a male, were walking down the street when Summers walked out of an apartment building and talked to them. L.L. entered the building with Summers and her friend remained outside.

L.L. testified as to the ensuing events as follows: after she and Summers entered one of the apartments, Summers locked the door and asked her to remove her clothes. She did so and asked Summers to remove his. He did, and the two lay on the floor. L.L. stated that first, Summers "sucked my tits" and "[t]hen he put his tail inside of me." L.L. told Summers to take it out because he was hurting her and he said no. "Then he left it in longer, and then he took the tail out and went somewhere."

Auburn police officers Sundquist and Sidell responded to a report of an incident at the apartment building. The officers knocked on the door of the apartment and L.L. admitted them. The apartment was vacant except for some "equipment or materials for refurbishing an apartment." L.L. was

dressed and tying her shoes when the officers arrived. Officer Sundquist asked L.L. if a Mr. Summers was present and a voice from inside the apartment responded, "Yeah, come on in." When the officers saw Summers in the back bedroom, he was zipping up his pants. Summers then put on a shirt which had been lying on the floor. Officer Sundquist returned to the front of the apartment and spoke to L.L., who told him that Summers had "put his fingers where her period was at".

Officer Sundquist returned to the back room and asked Summers if he had had sex with L.L. Summers replied that he had not and that he had been showing L.L. the apartment. While Officer Sundquist was speaking with L.L., Officer Sidell asked Summers what he was doing and Summers said he had been painting and was changing his clothes. Officer Sidell did not see any paint brushes or rollers, did not smell paint, did not see any other clothes, and noticed the closets were open and empty.

L.L. was taken to the emergency room and examined by Dr. Olmstead. Dr. Olmstead testified that L.L. told him Summers put his finger "where [her] period comes" and denied any penetration by the penis.[1] Dr. Olmstead found no evidence of traumatic penetration but testified that his examination "would neither support nor negate the possibility of penetration."[2]

Summers was charged with second degree rape, in violation of RCW 9A.44.050(1)(b). The court denied Summers' pretrial motion to admit evidence of L.L.'s past sexual behavior. The jury found Summers guilty of second degree rape and the court sentenced him to 27 months, within the standard range.

---

[1]However, L.L. testified she told Dr. Olmstead that Summers put his finger *and* his "tail" "in the hole."

[2]Dr. Olmstead testified that L.L. had a virginal introitus which means that the space was not large enough to pass a child and would not likely be large enough to pass a penis. However, he testified that objects could be inserted into a virginal introitus without leaving evidence of penetration.

1. Is expert testimony required to establish mental incapacity of a rape victim?

2. Was the evidence sufficient to sustain Summers' conviction?

3. Did the trial court err in excluding evidence of L.L.'s past sexual behavior?

### EXPERT TESTIMONY

■ Summers asserts that expert testimony is indispensable to prove mental incapacity and support a conviction under RCW 9A.44.050(1)(b).[3] "Mental incapacity" is defined as:

> that condition ~existing at the time of the offense which prevents a person from understanding the nature or consequences of the act of sexual intercourse whether that condition is produced by illness, defect, the influence of a substance or from some other cause.

RCW 9A.44.010(4). Plainly, the statute does not require expert testimony to prove mental incapacity. Accordingly, although not specifically articulated in Summers' brief, his contention must be based on the constitutional right to a fair trial. No case has held that expert testimony is indispensable as to this offense on the issue of a rape victim's mental incapacity. Indeed, counsel has not cited to any case making such a blanket requirement of expert testimony with respect to any crime. Factually, on this record it has not even been shown that the psychological and psychiatric community is prepared to express an opinion on the issue.[4] We find no persuasive policy reasoning to establish such a mandatory requirement. The issue is best approached on a case-by-case basis, by examining whether the nonexpert testimony justi-

---

[3]"(1) A person is guilty of rape in the second degree when, under circumstances not constituting rape in the first degree, the person engages in sexual intercourse with another person:

" . . . .

"(b) When the victim is incapable of consent by reason of being . . . mentally incapacitated[.]" RCW 9A.44.050(1)(b).

[4]It is of course commonplace to have expert opinion as to diminished capacity and insanity defenses.

fies a rational finding that the victim lacked the capacity to consent.

Summers relies principally on *State v. Stumpf*, 64 Wn. App. 522, 526-27, 827 P.2d 294 (1992), where the court stated, "the general rule [is] that expert testimony is required 'when an essential element in a case is best established by opinion but the subject matter is beyond the expertise of a lay witness.'" *Stumpf*, 64 Wn. App. at 526-27 (quoting 5A K. Tegland, Wash. Prac., *Evidence* § 300, at 435 (3d ed. 1989) (hereafter Tegland)).

Tegland's examples of the issues upon which expert testimony is required, as well as the issue in *Stumpf*, differ markedly from the issue of L.L.'s mental incapacity. For example, the broad issue in *Stumpf* was whether the defendant had diminished capacity due to his suffering from command delusions, a psychological disorder, and specifically whether the defendant could offer lay opinion testimony to establish that he suffered from such condition and that it was causally connected to his actions. These facts are a far cry from the facts in this case. Tegland cites issues arising in medical and legal malpractice cases and certain products liability cases as those requiring expert testimony.[5] With respect to criminal cases, Tegland notes that courts have generally rejected the argument that the prosecution should be required to prove an element of a crime with expert testimony.[6] He does note that crimes such as computer trespass which are technical in nature may call for expert testimony and necessitate an exception to the general rule.[7]

Evidence which establishes a rape victim's inability to understand the nature and consequences of sexual intercourse is not the kind of technical evidence which requires medical testimony to decipher. Unlike evidence of command

---

[5]5A K. Tegland, Wash. Prac., *Evidence* § 300, at 435-37 (3d ed. 1989).

[6]Tegland, at 439.

[7]Tegland, at 439.

delusions, or medical malpractice, or the functions of computers, a witness' comprehension of the basic consequences of his or her actions can be proved or disproved from his or her testimony and testimony as to behavior.

The out-of-state cases Summers cites do not hold to the contrary nor has our research uncovered a case which has. Summers cites *Smith v. State*,[8] in which the court held the evidence was insufficient to show that the rape victim was incapable of expressing consent or dissent. However, the case is readily distinguishable because the victim did not testify and the jury had no adequate basis upon which to assess her capacity. The court stated that in light of the testimony presented, expert testimony on the victim's mental capability "was sorely needed." *Smith v. State*, 345 So. 2d 325, 328 (Ala. Crim. App. 1976). But the court carefully declined to hold that expert testimony would be required in every case.[9]

Summers also cites *State v. Kingsley*,[10] in which the court held that testimony of the victims and their social worker was sufficient to demonstrate the victims' incapability of understanding or appreciating the nature of the rapes. Summers cites to the concurring opinion as supporting his argument; however, that opinion merely suggests that the State *should* present expert medical testimony, but does not state that expert testimony is required and does not cite any case so holding.

L.L.'s testimony was direct evidence of her lack of capacity and demonstrated her inability to comprehend basic facts such as the time of day, much less the nature or consequences of sexual intercourse.[11] On these facts, we find the

---

[8]345 So. 2d 325 (Ala. Crim. App. 1976).

[9]"We should not be understood to hold that in a proper case the jury might not draw the above inferences." *Smith v. State, supra* at 328.

[10]383 N.W.2d 828 (N.D. 1986).

[11]The adequacy of her testimony to permit a jury finding of lack of understanding is shown in the discussion of her testimony in the next section, pages 431-32.

jury was able to make a rational decision as to mental capacity without expert testimony.

While expert testimony as to a rape victim's mental incapacity may be probative, and might be required in some factual situations, there is no basis for requiring the State to establish mental incapacity by expert testimony in every case.

### SUFFICIENCY OF THE EVIDENCE

■ Summers contends the evidence was insufficient to sustain his conviction because no evidence was presented which showed L.L. "suffered from a mental condition which prevented her from forming an understanding of sexual conduct."[12] The court reviews a challenge to the sufficiency of the evidence to determine "whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt." *State v. Rempel,* 114 Wn.2d 77, 82, 785 P.2d 1134 (1990). We find the evidence sufficient.

L.L. had no knowledge of sexually transmitted diseases and her only knowledge of AIDS was that "[w]hen a man puts a wiener in you and you get it from them." She knew that "[w]hen a man puts a wiener in you and the sperm comes inside of you and you have the baby", and thought that a baby "[c]omes out of like your stomach or something like that." She defined intercourse as "[w]hen a man holds you down and puts a wiener in you, and if they force it in you, if you want it or don't want it" and defined sex as "[w]hen a man does something or something." She thought that intercourse occurred only between married persons:

> Q: Do you know why people would, a man and a woman, would want to have sex or intercourse?
> A: If he was to marry, or something, or something like that. If you was married to a man, and when they want intercourse from a lady, or from a man, and if she wants to have like a boy or a girl, that's [what] intercourse means.

---

[12]Summers does not appear to contest the fact that he and L.L. had sexual intercourse.

L.L. did not know why Summers wanted to suck on her breasts or put his "tail" inside her. She testified that she never had sex education classes, and that her period is "[w]here your sick time comes."

■ The evidence showed that L.L. had a basic understanding of the mechanical act of sexual intercourse, but this should not be equated with an understanding of its nature and consequences. She seemed to understand intercourse as something a husband and wife do in order to have a baby, but showed no understanding that she and Summers engaged in intercourse or acts of a sexual nature, or that she could have become pregnant or contracted a disease as a result. Her conflicting responses to questions, for instance, about whether a tail is a penis, show her confusion and lack of a clear understanding of sexual matters.

Testimony also showed that L.L. was unable to understand many fundamental, nonsexual matters. For example, she did not know what day of the week it was or the sequence of the days of the week. She did not know how to tell time or how to read. At one point, L.L. stated she was 44 years old, but approximately eight questions later, stated she was 24 years old and, when asked if her latter response was the truth or a lie, said it was the truth. L.L.'s confusion as to such fundamental and elementary facts supports a rational finding that she did not understand the nature and consequences of sexual intercourse.

The testimony, in a light most favorable to the State, allowed a rational trier of fact to conclude that L.L. was mentally incapacitated and did not understand the nature or consequences of the act of sexual intercourse. The evidence was sufficient to sustain Summers' conviction.

### EVIDENCE OF PAST SEXUAL BEHAVIOR

Summers contends the trial court erroneously excluded evidence of L.L.'s past sexual behavior because the evidence was not offered to impeach her credibility or to prove consent, but rather to prove that the charged crime was not committed. He also contends that the court's conclusion that any probative value is outweighed by the prejudicial effect

was an abuse of discretion and that the exclusion of the evidence deprived him of his right to present a defense.

■■ The State contends that, by its plain terms, RCW 9A.44.020[13] bars the admission of any such testimony on the

---

[13]"(1) In order to convict a person of any crime defined in this chapter it shall not be necessary that the testimony of the alleged victim be corroborated.

"(2) Evidence of the victim's past sexual behavior including but not limited to the victim's marital history, divorce history, or general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards is inadmissible on the issue of credibility and is inadmissible to prove the victim's consent except as provided in subsection (3) of this section, but when the perpetrator and the victim have engaged in sexual intercourse with each other in the past, and when the past behavior is material to the issue of consent, evidence concerning the past behavior between the perpetrator and the victim may be admissible on the issue of consent to the offense.

"(3) In any prosecution for the crime of rape or for an attempt to commit, or an assault with an intent to commit any such crime evidence of the victim's past sexual behavior including but not limited to the victim's marital behavior, divorce history, or general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards is not admissible if offered to attack the credibility of the victim and is admissible on the issue of consent only pursuant to the following procedure:

"(a) A written pretrial motion shall be made by the defendant to the court and prosecutor stating that the defense has an offer of proof of the relevancy of evidence of the past sexual behavior of the victim proposed to be presented and its relevancy on the issue of the consent of the victim.

"(b) The written motion shall be accompanied by an affidavit or affidavits in which the offer of proof shall be stated.

"(c) If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, if any, and the hearing shall be closed except to the necessary witnesses, the defendant, counsel, and those who have a direct interest in the case or in the work of the court.

"(d) At the conclusion of the hearing, if the court finds that the evidence proposed to be offered by the defendant regarding the past sexual behavior of the victim is relevant to the issue of the victim's consent; is not inadmissible because its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice; and that its exclusion would result in denial of substantial justice to the defendant; the court shall make an order stating what evidence may be introduced by the defendant, which order may include the nature of the questions to be permitted. The defendant may then offer evidence pursuant to the order of the court.

"(4) Nothing in this section shall be construed to prohibit cross-examination of the victim on the issue of past sexual behavior when the prosecution presents evidence in its case in chief tending to prove the nature of the victim's past sexual behavior, but the court may require a hearing pursuant to subsection (3) of this section concerning such evidence." RCW 9A.44.020.

facts here presented. While the language of the statute might arguably support such a construction, the court in *State v. Cosden*, 18 Wn. App. 213, 218, 568 P.2d 802 (1977), *review denied*, 89 Wn.2d 1016, *cert. denied*, 439 U.S. 823 (1978) refused to so hold under RCW 9.79.150, a predecessor to RCW 9A.44.020:

> But neither the prior case law nor the statute purports to establish a blanket exclusion [of evidence of prior sexual behavior] where the purpose of the evidence is highly relevant to other issues which may arise in prosecutions of rape.

*Cosden*, 18 Wn. App. at 218. In that case, there was medical testimony of a finding of semen in the victim's vagina. The defendant denied intercourse and proffered testimony of recent sexual intercourse by the victim to explain the presence of the semen. The court held that such testimony was not excluded per se by the terms of the statute, but sustained its exclusion because of an inadequate foundation and because its probative value was weak. Plainly, the possible significance of such testimony offering an explanation for directly incriminating evidence is far greater than the proffered testimony here which only peripherally bears on the issue of the victim's capacity to understand the nature or consequences of the act.

The court indicated in its preliminary ruling that it was excluding the evidence because it was not probative of L.L.'s capacity to consent. In this regard it is significant that the statute uses the disjunctive: nature *or* consequences. Evidence of past sexual encounters does not necessarily show understanding of the nature and, even more clearly, the consequences of sexual intercourse, such as pregnancy or disease. The court's statement that the evidence was not probative is, of course, a different way of saying that the evidence was not relevant.[14] The best evidence of L.L.'s capacity to understand is her testimony. Whether she gained knowledge from prior sexual experience or otherwise is unimportant; the issue is her capacity to understand. Even if the

---

[14] " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.

evidence had some minimal relevance, it would clearly not satisfy the other requirements of RCW 9A.44.020(3).

In addition to relevance, the court must determine whether the probative value of the evidence outweighs the danger of undue prejudice and whether the "exclusion would result in the denial of substantial justice to the defendant". RCW 9A.44.020(3)(d). Where the lack of capacity is based on a permanent, organic condition, it logically follows that prior acts of intercourse cannot demonstrate that the victim understands the nature and consequences because the prior acts may have occurred due to the same lack of capacity. The risk of undue prejudice from the admission of such evidence is high, while the benefit to the defense is insubstantial.

▊ The court's decision as to admission of testimony under the rape shield statute is reviewed for abuse of discretion.[15] We find no abuse.

▊ Finally, Summers asserts that the statute and the court's ruling unconstitutionally limited his right to present his defense under the sixth amendment to the United States Constitution and article 1, section 22 of the Washington State Constitution. No case is cited so holding. A defendant has no right to present irrelevant evidence, but even if the evidence here in question has some minimal relevance, it is not necessarily error to exclude it.[16]

Summers merely quotes general language from *State v. Hudlow*, 99 Wn.2d 1, 659 P.2d 514 (1983) and ignores the fact that the court acknowledged the State's interest in using the rape shield statute to bar evidence even if it is of arguably probative value which may distract and inflame jurors and its interest in encouraging rape victims to step forward and prosecute. The court held that these two interests "appear to us to be compelling enough to permit the trial court to exclude minimally relevant prior sexual history evidence if the introduction of such evidence would prejudice the truth-

---

[15]*State v. Hudlow*, 99 Wn.2d 1, 17-18, 659 P.2d 514 (1983).

[16]*See State v. Hudlow*, 99 Wn.2d 1, 16, 659 P.2d 514 (1983).

finding function of the trial." *State v. Hudlow, supra* at 16. The trial court's ruling falls squarely within this language.

Summers also fails to discuss *Michigan v. Lucas*,[17] where the United States Supreme Court held that the exclusion and notice provisions of Michigan's rape shield statute, which are very similar to Washington's, were not per se violative of the defendant's right to put on a defense. The court noted that when a statute

> operates to prevent a criminal defendant from presenting relevant evidence, the defendant's ability to confront adverse witnesses and present a defense is diminished. This does not necessarily render the statute unconstitutional. "[T]he right to present relevant testimony is not without limitation. The right 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *Rock v. Arkansas*, 483 U. S. 44, 55 (1987), quoting *Chambers v. Mississippi*, 410 U. S. 284, 295 (1973). We have explained, for example, that "trial judges retain wide latitude" to limit reasonably a criminal defendant's right to cross-examine a witness "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U. S. 673, 679 (1986).

*Michigan v. Lucas*, 500 U.S. 145, 149, 114 L. Ed. 2d 205, 212, 111 S. Ct. 1743 (1991). Neither Washington's rape shield statute nor the trial court's ruling infringed Summers' constitutional right to defend.

Affirmed.

WEBSTER, C.J., and AGID, J., concur.

Review denied at 122 Wn.2d 1026 (1993).

---

[17]500 U.S. 145, 114 L. Ed. 2d 205, 111 S. Ct. 1743 (1991).