Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/20/2018 08:10 AM CDT

In re Interest of K.M., a child
under 18 years of age.
State of Nebraska, appellee,
v. K.M., appellant.

___ N.W.2d ___

Filed April 20, 2018.   No. S-16-1205.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.

2. **Sexual Assault.** A victim's lack of consent is not an element of the crime of sexual assault when the victim is incapable of resisting or appraising the nature of his or her conduct.

3. ____. To render an individual incapable to consent to sexual conduct, a mental impairment must be severe. A person in this category is treated as equivalent to a severely intoxicated or an unconscious person. Not every mental challenge or impairment is so severe that the person lacks the capacity to consent.

4. ____. Lack-of-capacity sexual assault under Neb. Rev. Stat. § 28-319(1)(b) (Reissue 2016) requires on the part of the victim "a significant abnormality, such as severe intoxication or other substantial mental or physical impairment."

5. **Sexual Assault: Proof.** To prove a lack-of-capacity sexual assault on the basis of a mental impairment, under Neb. Rev. Stat. § 28-319(1)(b) (Reissue 2016), the State must prove beyond a reasonable doubt that the victim's impairment was so severe that he or she was mentally incapable of resisting or mentally incapable of appraising the nature of the sexual conduct with the alleged perpetrator.

6. **Sexual Assault: Evidence: Testimony.** Under Neb. Rev. Stat. § 28-319(1)(b) (Reissue 2016), while expert testimony as to a victim's

mental incapacity may be probative, expert testimony is not required in every case of lack-of-capacity sexual assault based on the victim's mental illness or impairment.

Petition for further review from the Court of Appeals, Inbody, Pirtle, and Riedmann, Judges, on appeal thereto from the Separate Juvenile Court of Douglas County, Vernon Daniels, Judge. Judgment of Court of Appeals affirmed.

Thomas C. Riley, Douglas County Public Defender, and Timothy F. Shanahan for appellant.

Donald W. Kleine, Douglas County Attorney, Anthony M. Hernandez, and Laura E. Lemoine, Senior Certified Law Student, for appellee.

Heavican, C.J., Cassel, Stacy, and Funke, JJ., and Colborn and Samson, District Judges.

Funke, J.
## I. NATURE OF CASE
The separate juvenile court of Douglas County adjudicated K.M. as being a "juvenile who has committed an act which would constitute a felony under the laws of this state"[1] by committing first degree sexual assault, having "subject[ed] another person to sexual penetration [and] who knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct."[2]

On appeal, the Nebraska Court of Appeals reversed the adjudication, finding insufficient evidence to uphold K.M.'s adjudication by proof beyond a reasonable doubt.[3] The State

---

[1] Neb. Rev. Stat. § 43-247(2) (Reissue 2016).

[2] Neb. Rev. Stat. § 28-319(1)(b) (Reissue 2016).

[3] *In re Interest of Kalen M.*, No. A-16-1205, 2017 WL 4675799 (Neb. App. Oct. 17, 2017) (selected for posting to court website).

petitioned for further review, which we granted. Because the State failed to prove beyond a reasonable doubt that K.M. knew or should have known that D.F., the alleged victim, "was mentally or physically incapable of resisting or appraising the nature of the conduct," we agree with the Court of Appeals and affirm its ruling.

## II. BACKGROUND

Omaha Police Department Det. Kristine Love received a report in early 2016 from Child Protective Services that a school teacher had reported D.F.'s report of sexual contact with K.M. while at D.F.'s home. D.F. has Asperger syndrome.[4] Love observed a forensic interview that was conducted with D.F. at Project Harmony, a child advocacy center, and then conducted her own interview with D.F.

After interviewing D.F., Love contacted K.M. at his school and asked him to speak with her in an interview at police headquarters, which K.M. agreed to do. Upon the completion of the interview, Love arrested K.M. for first degree sexual assault based on statements he made during the interview. K.M. turned 13 years old shortly after the alleged incident but before being interviewed by Love; D.F. was 12 years old.

The Douglas County Attorney filed a petition to adjudicate K.M. under § 43-247(2). The petition alleged that K.M. committed conduct that would constitute first degree sexual assault under § 28-319(1)(b) based on D.F.'s mental impairment. K.M. denied the allegation in the petition.

### 1. Adjudication Hearing

On November 4, 2016, an adjudication hearing was held before the separate juvenile court of Douglas County. Because

---

[4] See Asperger Syndrome, Autism Speaks, https://www.autismspeaks.org/what-autism/asperger-syndrome (last visited Apr. 11, 2018) (indicating that what was previously diagnosed as Asperger syndrome has now been categorized as autism spectrum disorder since the publication of the DSM-5 diagnostic manual in 2013).

K.M. denied the petition's allegation, the State had the burden to prove his guilt by proof beyond a reasonable doubt.[5]

### (a) Video Interview

Love testified about the investigation and her interview with K.M. A video recording of the interview was entered into evidence.

The video shows that K.M. waived his *Miranda*[6] rights at the beginning of the interview. Love advised K.M. of the allegations made by D.F., which K.M. initially denied. K.M. stated that he would never do that to D.F. because it would be wrong, explaining that D.F. has autism and does not know right from wrong and that it would be as if K.M. were corrupting him. After approximately 40 minutes, K.M. admitted that his penis may have penetrated D.F.'s anus approximately 2 centimeters.

### (b) Other Evidence

The State also presented the testimony of Sarah Cleaver, a pediatric nurse practitioner at Project Harmony. Cleaver performed a medical examination of D.F. at Project Harmony's medical clinic and authored a report of her examination of D.F. In doing so, she relied on her examination; a medical history from D.F.'s mother, which included the fact that D.F. has Asperger syndrome and attention deficit hyperactivity disorder; and D.F.'s statements in the Child Protective Services report and the Project Harmony forensic interview. Cleaver's diagnosis of D.F. was suspected child sexual abuse, constipation, and anal fissures. She attributed D.F.'s anal fissures to his history of constipation, but said that they could have also been caused by the penile-anal penetration that he reported.

The court admitted Cleaver's report, which included D.F.'s allegations from the Child Protective Services report and

---

[5] Neb. Rev. Stat. § 43-279(2) (Reissue 2016).

[6] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Cleaver's examination, over K.M.'s objection on hearsay and the Confrontation Clause. The court overruled the objections on the basis of the hearsay exception for statements made for the purpose of medical diagnosis.

On cross-examination, Cleaver said that she thought the most likely explanation for D.F.'s anal fissures was his constipation, as D.F. reported to her he had a large stool and then his bottom began to bleed. She agreed that she could not reach any conclusion about sexual assault from the anal fissures. She did not give any testimony or opinion about D.F.'s mental condition beyond stating that this diagnosis had been reported to her.

Neither D.F. nor K.M. testified at the hearing. And no specific evidence about D.F.'s Asperger syndrome diagnosis or mental condition was offered at the hearing.

The juvenile court issued an order adjudicating K.M. under § 43-247(2), finding the State had proved its case by proof beyond a reasonable doubt. K.M. appealed.

## 2. COURT OF APPEALS' OPINION

On appeal to the Court of Appeals, K.M.'s sole assignment of error was that "[t]he Juvenile Court erred in finding that [K.M.] subjected D.F. . . . to sexual contact because the evidence presented at trial was insufficient to support a finding of guilt."

The Court of Appeals concluded that the State had proved beyond a reasonable doubt that K.M. subjected D.F. to sexual penetration, relying on K.M.'s confession in the interview. But it concluded that the State had failed to prove that K.M. "knew or should have known that [D.F.] was mentally or physically incapable of resisting or appraising the nature of his conduct."[7]

The Court of Appeals said that to prove a sexual assault under § 28-319(1)(b), the State must establish (1) a significant

---

[7] *In re Interest of Kalen M., supra* note 3, 2017 WL 4675799 at *2.

abnormality, such as severe intoxication or other substantial mental or physical impairment, on the part of the alleged victim and (2) knowledge of the abnormality on the part of the alleged attacker.

The court further said:

> [T]here was no evidence presented by the State regarding where [D.F.'s] autism fell on the autism spectrum, whether [D.F.'s] autism would render [him] incapable of resisting or appraising the nature of [K.M.'s] conduct, and whether [K.M.] knew or should have known of [D.F.'s] inability to resist or appraise the nature of [K.M.'s] conduct.[8]

It concluded that the State had failed to prove its allegation beyond a reasonable doubt, because it did not present any evidence of D.F.'s inability to resist or appraise the nature of his conduct, beyond reports that D.F. had autism. As a result, the Court of Appeals reversed the adjudication.

The State petitioned for further review, which we granted.

### III. ASSIGNMENTS OF ERROR

The State argues that the Court of Appeals "erred in determining that the State failed to adduce sufficient evidence that [K.M.] knew or should have known that [D.F.] was mentally or physically incapable of resisting or appraising the nature of his conduct."

### IV. STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.[9] When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.[10]

---

[8] *Id.*

[9] *In re Interest of Elainna R.*, 298 Neb. 436, 904 N.W.2d 689 (2017).

[10] *In re Interest of LeVanta S.*, 295 Neb. 151, 887 N.W.2d 502 (2016).

## V. ANALYSIS

Before we reach the merits of this matter, we will address a proposition of law articulated by the State during oral argument. The State asserted that on a claim of insufficiency of the evidence, an appellate court will not set aside a guilty verdict in a juvenile case where such verdict is supported by relevant evidence. The State seems to be importing into juvenile matters a standard of review applicable in adult criminal matters.

It is correct that Nebraska appellate courts have imported criminal standards into juvenile cases on other instances. For example, we have applied the same standard of review for a motion to suppress filed by a juvenile in juvenile court.[11] In ordering restitution, juvenile courts are to consider factors similar to those utilized in the criminal restitution statute.[12] The Court of Appeals has applied the criminal standard for withdrawal of a plea in the context of a request to withdraw an admission in a juvenile proceeding.[13]

However, in only one juvenile matter, *In re Interest of McManaman*,[14] did we apply a standard of review applicable in adult criminal proceedings. In that matter, we stated that we

> "'will not interfere with a verdict of guilty based on con-
> flicting evidence unless, as a matter of law, the evidence
> is so lacking in probative force that it is insufficient to
> support the finding of guilt beyond a reasonable doubt. .
> . . A guilty verdict of the fact finder in a criminal case
> must be sustained if there is substantial evidence, taking
> the view most favorable to the State, to support it.'"[15]

Instead, in juvenile matters, we have routinely held that our review is de novo on the record and that an appellate

---

[11] See *In re Interest of Miah S.*, 290 Neb. 607, 861 N.W.2d 406 (2015).

[12] *In re Interest of Laurance S.*, 274 Neb. 620, 742 N.W.2d 484 (2007).

[13] *In re Interest of Justin V.*, 18 Neb. App. 960, 797 N.W.2d 755 (2011).

[14] *In re Interest of McManaman*, 222 Neb. 263, 383 N.W.2d 45 (1986).

[15] *Id*. at 265-66, 383 N.W.2d at 47.

court is required to reach a conclusion independent of the lower courts' findings.[16] We find this de novo standard of review to be most applicable to juvenile matters. As a result, we take this opportunity to disapprove of our holding in *In re Interest of McManaman* as it relates to importing into a juvenile matter the standard of review used in adult criminal proceedings.

In turning to the merits of the instant matter, § 43-247 defines and delimits the boundaries of the jurisdiction of juvenile courts. Under § 43-247(2), juvenile courts may exercise jurisdiction over "[a]ny juvenile who has committed an act which would constitute a felony under the laws of this state . . . ."

When the State, as it did here, alleges that a juvenile has committed a felony and is thus subject to juvenile court jurisdiction under § 43-247(2), the juvenile is entitled to contest the allegations in an adjudication hearing.[17] Where the juvenile denies the allegations, the State must prove its case by proof beyond a reasonable doubt.[18]

The felony that the State alleges K.M. committed constitutes first degree sexual assault under § 28-319, which provides:

> (1) Any person who subjects another person to sexual penetration (a) without the consent of the victim, (b) who knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct, or (c) when the actor is nineteen years of age or older and the victim is at least twelve but less than sixteen years of age is guilty of sexual assault in the first degree.

The State did not allege that K.M.'s act of sexually penetrating D.F. was "without the consent of the victim," under § 28-319(1)(a). Rather, it argues that K.M.'s conduct violated

---

[16] See *In re Interest of Elainna R., supra* note 9.

[17] See § 43-279.

[18] § 43-279(2).

§ 28-319(1)(b), because he "knew or should have known that [D.F.] was mentally or physically incapable of resisting or appraising the nature of his or her conduct."[19]

[2] A victim's lack of consent is not an element of the crime of sexual assault when the victim is incapable of resisting or appraising the nature of his or her conduct.[20] Thus, in this matter, the State was required to prove beyond a reasonable doubt that D.F. lacked the capacity to consent to the sexual penetration and that K.M. knew or should have known that D.F. lacked the capacity to consent.[21]

While K.M. acknowledged that D.F. was autistic and that he did not know right from wrong, such language reflects our application of the *M'Naghten* rule—to determine whether a person is not criminally responsible for his or her actions[22]—not to determine whether a victim had the capacity to consent. Instead, the law of sexual assault has traditionally recognized certain circumstances under which an individual lacks the capacity to consent to sexual conduct and where sexual contact with that person thus constitutes sexual assault: where the victim is severely intoxicated—whether the intoxicant be administered by the defendant, another, or self-administered[23]; where the victim is unconscious[24]; and where the victim is "mentally incompetent."[25]

---

[19] Brief on petition for further review for appellee at 3.

[20] *State v. Rossbach*, 264 Neb. 563, 650 N.W.2d 242 (2002).

[21] See *id.*

[22] See 9 A.L.R.4th 526 (1981).

[23] Wayne R. LaFave, Criminal Law §§ 17.3(e) and 17.4(b) (6th ed. 2017). See, also, *State v. Sanders*, 269 Neb. 895, 697 N.W.2d 657 (2005) (intoxication); *State v. Freeman*, 267 Neb. 737, 677 N.W.2d 164 (2004); *Rossbach, supra* note 20; 3 Charles E. Torcia, Wharton's Criminal Law § 282 (15th ed. 1995).

[24] LaFave, *supra* note 23. See, also, *Freeman, supra* note 23; *State v. Moeller*, 1 Neb. App. 1046, 510 N.W.2d 500 (1993).

[25] LaFave, *supra* note 23, § 17.4(b) at 1151.

We address in turn two issues regarding the requisite proof for a lack-of-capacity sexual assault under § 28-319(1)(b) based on a victim's mental impairment: the type or severity of mental impairment required for an individual to lack the capacity to consent, and whether expert testimony is necessary to prove a lack of capacity based on mental impairment.

## 1. Severity of Mental Impairment

[3,4] To render an individual incapable to consent to sexual conduct, a mental impairment must be severe.[26] A person in this category is treated as equivalent to a severely intoxicated or an unconscious person.[27] Thus, not every mental challenge or impairment is so severe that the person lacks the capacity to consent.[28] We have said lack-of-capacity sexual assault under § 28-319(1)(b) requires on the part of the victim "a significant abnormality, such as severe intoxication or other substantial mental or physical impairment."[29]

In *Reavis v. Slominski*,[30] this court considered a civil tort claim for battery based on an alleged sexual assault, but relied on and discussed Nebraska's criminal sexual assault statutes in considering the issue of consent. The court was divided and issued four separate opinions, with none commanding a majority.[31] However, some of the opinions in *Reavis* are helpful here.

The lead opinion by Justice Lanphier discussed the approach taken by other jurisdictions when considering consent and said that "[i]t would appear that issue of effective consent to sexual contact is generally only raised when the victim

---

[26] *Rossbach, supra* note 20.

[27] LaFave, *supra* note 23.

[28] See *id.*

[29] *Rossbach, supra* note 20, 264 Neb. at 572, 650 N.W.2d at 250.

[30] *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996).

[31] *Id.*

suffers from an extreme mental handicap or deficiency."[32] One of the dissenting opinions, written by Justice Caporale and joined by Justice Fahrnbruch, said that "other jurisdictions have concluded that one has such capacity if one understands and appreciates the nature of the act of sexual intercourse, its character, and the probable or natural consequences which may attend it."[33] While the opinions in that case sharply disagreed on some aspects of the law of consent, there was a general consensus that to establish a lack of consent based on a mental impairment, the impairment must be severe.[34]

The Kansas Court of Appeals has articulated the following standard: "If an individual can comprehend the sexual nature of the proposed act, can understand he or she has the right to refuse to participate, and possesses a rudimentary grasp of the possible results arising from participation in the act, he or she has the capacity to consent."[35]

[5] Thus, we hold that to prove a lack-of-capacity sexual assault on the basis of a mental impairment, under § 28-319(1)(b), the State must prove beyond a reasonable doubt that the victim's impairment was so severe that he or she was "mentally . . . incapable of resisting" or "mentally . . . incapable of . . . appraising the nature of" the sexual conduct with the alleged perpetrator.

## 2. Necessity of Expert Testimony

Having found that proving lack-of-capacity sexual assault based on a mental impairment requires the State to prove that the victim's impairment is so severe that he or she is mentally unable to resist or understand the nature of the sexual act, we

---

[32] *Id.* at 722, 551 N.W.2d at 538 (Lanphier, J.).

[33] *Id.* at 743, 551 N.W.2d at 549 (Caporale, J., dissenting; Fahrnbruch, J., joins). See, also, *State v. Johnson*, 155 Ariz. 23, 745 P.2d 81 (1987).

[34] See, generally, *Reavis, supra* note 30.

[35] *State v. Ice*, 27 Kan. App. 2d 1, 5, 997 P.2d 737, 740 (2000).

must also determine whether expert testimony is required to establish this fact.

Under Neb. Rev. Stat. § 27-702 (Reissue 2016), if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

However, when an expert's opinion on a disputed issue is a conclusion which may be deduced equally as well by the trier of fact with sufficient evidence on the issue, the expert's opinion is superfluous and does not assist the trier in understanding the evidence or determining a factual issue.[36]

In *State v. Collins*, the Court of Appeals considered this question and concluded that "[w]hether expert testimony as to a victim's mental or physical capacity to resist or to appraise the nature of the perpetrator's conduct is indispensable in a prosecution under § 28-319(1)(b) must be approached on a case-by-case basis."[37]

Several other jurisdictions have also considered the need for expert testimony and have concluded that a lay juror is able to assess the extent of a victim's mental capacity in the context of lack-of-capacity sexual assaults.[38]

A person's capacity to understand something is a factual issue for the jury and, like other facts, may properly be established by circumstantial evidence.[39] More particularly, evidence explaining what a person knows and how the person came to know it may well give rise to an inference of incapacity.

---

[36] *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001).

[37] *State v. Collins*, 7 Neb. App. 187, 202, 583 N.W.2d 341, 350-51 (1998).

[38] See, *Jackson v. State*, 890 P.2d 587 (Alaska App. 1995); *State v. Summers*, 70 Wash. App. 424, 853 P.2d 953 (1993); *State v. Wallin*, 52 Kan. App. 2d 256, 366 P.2d 651 (2016); *Fuentes v. State*, 454 Md. 296, 164 A.3d 265 (2017); *State v. Hunt*, 365 N.C. 432, 722 S.E.2d 484 (2012).

[39] *Jackson, supra* note 38.

While expert testimony as to a victim's mental incapacity may be probative, and might be required in some factual situations, there is no basis for requiring the State to establish mental incapacity by expert testimony in every case.[40] Evidence which establishes a victim's inability to understand the nature and consequences of sexual intercourse is not the kind of technical evidence which requires medical testimony to decipher. Unlike evidence of medical or legal malpractice, or the functions of technical equipment, a witness' comprehension of the basic consequences of his or her actions may be proved or disproved from his or her testimony and testimony as to behavior.

[6] As a result, we conclude that while expert testimony as to a victim's mental incapacity may be probative, expert testimony is not required in every case of lack-of-capacity sexual assault based on the victim's mental illness or impairment.

### 3. Application

The State's evidence that D.F. lacked the capacity to consent to the sexual penetration by K.M. is reducible to a secondhand report that D.F. had been diagnosed with Asperger syndrome. The State's evidentiary showing was insufficient to prove beyond a reasonable doubt that D.F. was, in fact, incapable of resisting or appraising the nature of the sexual conduct.

The State presented no evidence about D.F.'s diagnosis. It presented no expert testimony on the nature of Asperger syndrome or how it affects an individual's ability to resist or understand the nature of sexual conduct. D.F. did not testify, and the trier of fact was unable to judge D.F.'s level of mental impairment. No evidence was given about D.F.'s own ability to resist or understand sexual acts. The State apparently relies on the fact of the reported diagnosis and the testimony of K.M.

---

[40] *Summers, supra* note 38.

Given the dearth of evidence regarding D.F.'s mental ability, the State understandably focused its arguments in its appellate brief on the evidence that the penetration occurred and on K.M.'s statements showing that he knew that D.F. had autism and was "mentally slower than where he should be."[41] But the occurrence of the penetration is not the primary issue in dispute. And K.M.'s knowledge of D.F.'s autism does not establish that D.F.'s mental condition was so severe that he lacked the capacity to consent.

Moreover, K.M.'s statement that D.F. has autism and does not know right from wrong fails to show that D.F. lacked the capacity to consent. A 13-year-old boy's comment bearing on the quality of D.F.'s moral reasoning does nothing to show that D.F. suffered from a mental impairment so severe that he was unable to resist or understand sexual conduct. Nor is K.M.'s comment about how it would be wrong for him to engage in sexual conduct with D.F. of any help to the State. The test for a lack-of-capacity sexual assault is not one of the defendant's morality, but of the victim's ability to resist or appraise the nature of the sexual conduct.

The State bears the burden, when proving sexual assault based on the victim's lack of capacity, that the victim actually lacked the capacity to consent. It has not done so here.

## VI. CONCLUSION

For the reasons set forth herein, we affirm the Court of Appeals' reversal of the juvenile court's adjudication.

AFFIRMED.

MILLER-LERMAN, J., participating on briefs.
WRIGHT, J., not participating.

---

[41] Brief for appellee at 14.