IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF JOKIN S.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF JOKIN S., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

DEVON S., APPELLANT.

Filed March 12, 2019.    No. A-18-625.

Appeal from the Separate Juvenile Court of Douglas County: MATTHEW R. KAHLER, Judge. Affirmed in part, and in part reversed and vacated.

Thomas C. Riley, Douglas County Public Defender, Korey T. Taylor, and Katie Jadlowski for appellant.

Donald W. Kleine, Douglas County Attorney, Shinelle Pattavina, and David M. Ceraso, Senior Certified Law Student, for appellee.

RIEDMANN, BISHOP, and WELCH, Judges.

WELCH, Judge.

INTRODUCTION

Devon S. appeals from the order of the Douglas County Separate Juvenile Court adjudicating Jokin S. as a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). He also appeals from certain requirements set forth in the juvenile court's dispositional order. Having considered Devon's assigned errors, we affirm the juvenile court's order adjudicating Jokin and the dispositional order and rehabilitation plan with the exception that we reverse and vacate that portion of the plan requiring Devon to complete domestic violence classes.

- 1 -

STATEMENT OF FACTS

On February 15, 2017, a party reported Devon to the Child Abuse and Neglect Hotline for driving under the influence of cocaine while 2-year-old Jokin was present in the car and inappropriately placed in an infant car seat. Jokin, who was born in April 2014, has severe mental and physical delays and needs 24-hour care. He is legally blind and deaf; he cannot walk or talk; and he eats mainly through a feeding tube. Devon is trained and certified to care for Jokin.

On February 16, 2017, the State filed an ex parte motion for immediate custody of Jokin and, within the next 2 days, Jokin was placed in the emergency custody of the Department of Health and Human Services (DHHS) with placement to exclude both Devon and Jokin's mother's home. Also on February 16, the State filed adjudication petitions regarding both Devon and Jokin's mother which sought to adjudicate Jokin as a child within the meaning of § 43-247(3)(a). Jokin's mother is not part of this appeal and will only be discussed as necessary for resolution of this appeal.

The February 2017 adjudication petition regarding Devon was dismissed in June due to the State's failure to serve Devon. On June 30, the State filed a second supplemental petition, alleging that, among other things, Devon's use of alcohol and/or controlled substances put Jokin at risk for harm. In July, the court found, on the State's motion, that the State was unable to locate Devon and ordered service by publication. In August, the court advised Devon of his rights.

In September 2017, the State presented an agreement between the State and Devon wherein Devon agreed, and was ordered by the court, to participate in, and cooperate with, all visitation services, complete a chemical dependency evaluation and follow all recommendations, and submit urinalysis testing within 12 hours of a request by DHHS. This agreement further contemplated transitioning from supervised visits to unsupervised visits in 45 days. The matter was then continued in anticipation of dismissal in 90 days.

On October 19, 2017, the State moved for an ex parte order to keep Devon's visits with Jokin supervised due to his failure to follow the terms of the agreement. The court ordered a continuation of supervised visitations and a hearing thereon was held on October 31. At the hearing, the State adduced evidence that Devon had only begun complying with the agreement about 2 weeks earlier. Kaylea Kult, the family permanency specialist assigned to Jokin's case, testified about Devon's compliance with drug testing and treatment. Kult testified that Devon had completed a chemical dependency evaluation and that the evaluation recommended "Level 1 outpatient treatment." Kult further testified that Devon had been attending outpatient treatment on a regular basis since the last week of September. Kult testified Devon was unsuccessfully discharged from the drug testing program after completing 3 out of 24 tests during the months of August and September. During August and September, Devon missed 21 drug screens. Kult was able to re-refer Devon for drug testing and he had tested four times, but she did not testify regarding the results of those tests. Kult testified that Devon had been attending Alcoholics Anonymous meetings but his attendance was inconsistent.

Following this hearing, the juvenile court ordered that Devon's visits with Jokin remain supervised. A hearing was set for November 17, 2017, and the court stated its intent to allow unsupervised visitations if Devon followed the agreement in the interim. On November 20, the court ordered that visitation should remain supervised.

In January 2018, the State filed a third supplemental petition which alleged that Jokin lacked proper parental care by reason of the fault or habits of Devon, to wit:

A. Devon . . . failed to fully engage in services in order to have the minor child return to his home.

B. Jokin . . . has many medical needs.

C. Devon . . . has failed to provide proper parental care, support, supervision, and/or protection for said juvenile.

D. Due to the above reasons, said juvenile is at risk for harm.

The adjudication hearing was held in May. Much of the evidence centered on the services offered to Devon following his agreement to participate in those services followed by his failure to fully participate in those services. There was also testimony on how the case began and the court took judicial notice of the entire case file. Evidence adduced at trial established that, out of 66 drug tests, Devon missed 51 drug tests and tested negative on 15. Each of the missed drug tests is a presumptive positive test.

Kult testified that the case started because of Devon's cocaine use. She said that she confirmed these facts with Devon and he admitted to taking ecstasy which he claimed resulted in the positive test result for cocaine. Kult testified that Devon had completed an outpatient drug treatment program and Devon's counsel offered into evidence a certificate of completion for that program.

After the trial, the court found that Jokin was a child within the meaning of § 43-247(3)(a). The court dismissed the count alleging that Jokin has many medical needs for lack of evidence. The court found to be true the counts alleging that Devon failed to fully participate in services offered to get Jokin home; that Devon failed to provide proper parental care, support, and supervision; and that these things put Jokin at risk for harm.

On June 12, 2018, the court held a dispositional hearing. Four exhibits were received during the hearing including summaries of visits with Jokin. During one of the visits, the visitation worker noted in her report that Devon was arguing "a lot" with Jokin's mother. There was also reference to Devon potentially manipulating Jokin's mother. The report did not include any allegations of physical or verbal abuse. The report mentioned two other visits where both Devon and Jokin's mother were both present and there were no notations of any arguments.

In the dispositional order, the court ordered Devon to, among other things, complete a domestic violence class, obtain a chemical dependency evaluation and psychological evaluation, and submit to random drug and alcohol testing. Devon timely appeals the adjudication order and the dispositional order.

## ASSIGNMENTS OF ERROR

Devon's assignments of error, combined and restated, are that the juvenile court erred: (1) in adjudicating Jokin and (2) in ordering drug services and treatment, domestic violence classes, and a psychological evaluation in its dispositional order.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of K.M.,* 299 Neb. 636, 910 N.W.2d 82 (2018). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

## ANALYSIS

### ADJUDICATION

Devon first contends that the juvenile court erred in adjudicating Jokin.

To obtain jurisdiction over a juvenile at the adjudication stage, the court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsection of § 43-247. Section 43-247(3)(a) outlines the basis for the juvenile court's jurisdiction and grants exclusive jurisdiction over any juvenile "who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian."

The purpose of the adjudication phase is to protect the interests of the child. *In re Interest of Kane L. & Carter L.*, 299 Neb. 834, 910 N.W.2d 789 (2018). The Nebraska Juvenile Code does not require the separate juvenile court to wait until disaster has befallen a minor child before the court may acquire jurisdiction. *Id.* While the State need not prove that the child has actually suffered physical harm, Nebraska case law is clear that at a minimum, the State must establish that without intervention, there is a definite risk of future harm. *Id.* The State must prove such allegations by a preponderance of the evidence. *Id.*

Here, one of the allegations contained in the adjudication petition was that Devon had failed to provide proper parental care support, supervision, and/or protection and, as a result, Jokin was at risk for harm. The juvenile court found that the State had proven this allegation by a preponderance of the evidence. The evidence adduced at the adjudication hearing established that Jokin was removed from his parent's care after Devon was stopped for driving under the influence of cocaine while 2-year-old Jokin was present in the car and improperly placed in an infant car seat. Thereafter, Devon voluntarily agreed to submit to drug testing and was ordered to do so by the juvenile court with the matter then continued in anticipation of it being dismissed in 90 days. However, the matter was not dismissed and evidence adduced at the adjudication hearing established that out of 66 drug tests, Devon missed 51 drug tests and tested negative on 15. Each of the missed drug tests is considered to be a positive test.

Following our de novo review on the record, we hold that the State proved by a preponderance of the evidence that Jokin is a child under § 43-247(3)(a) because of Devon's drug use and Devon's demonstrated lack of judgment relating to Jokin's safety in connection with that drug use. As opposed to being an isolated incident as argued by Devon, the evidence indicates that Devon's drug use continues which, based upon Devon's prior conduct, creates a significant safety risk for Jokin and demonstrates that Jokin should be removed from parental placement and custody until the situation is safe for Jokin to return. See *In re Interest of Kane L. & Carter L., supra*. Thus, based upon our de novo review, we find that the juvenile court properly found that Jokin was a child within the meaning of § 43-247(3)(a).

Devon next argues that the juvenile court erred in its dispositional order which required him to complete domestic violence classes, obtain a psychological evaluation, and ordered drug services and treatment. Specifically, he asserts "[t]he State failed to [prove] by a preponderance of the evidence and did not offer any evidence at the adjudication hearing that [Devon] participated in domestic violence, that his drug classes and previously completed evaluation were not sufficient to prove completion of such, or that he had any mental health issues which required a psychological evaluation." Brief of appellant at 27.

A dispositional order imposing a rehabilitation plan for parents in a juvenile case is a final, appealable order. *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003). Neb. Rev. Stat. § 43-285 (Reissue 2016) grants broad authority to juvenile courts to make orders which are in the best interests of juveniles under their jurisdiction. See *In re Interest of Paxton H.*, 300 Neb. 446, 915 N.W.2d 45 (2018). When DHHS presents a plan, as they did at the dispositional hearing in this case, "[t]he court may approve the plan, modify the plan, order that an alternative plan be developed, or implement another plan that is in the child's best interests." § 43-285(2)(c).

The proceeding at which evidence is adduced to determine if a rehabilitative plan is necessary is the disposition hearing. *In re Interest of J.H.,* 242 Neb. 906, 497 N.W.2d 346 (1993).

At a disposition hearing, a juvenile court must determine reasonable provisions material to the parental plan's rehabilitative objective of correcting, eliminating, or ameliorating the situation or condition on which the adjudication has been obtained. *Id.* But see *In re Interest of Tabatha R.,* 255 Neb. 818, 587 N.W.2d 109 (1998) (discussing exception to this requirement when court determines that reunification is not in child's best interests). "Once a plan of reunification has been ordered to correct the conditions underlying the adjudication under § 43-247(3)(a), the plan must be reasonably related to the objective of reuniting the parents with the children." See *In re Interest of Ty M. & Devon M.,* 265 Neb. 150, 163-64, 655 N.W.2d 672, 685 (2003). Furthermore, "[t]he record of proceedings before a juvenile court shall contain the evidence presented at the dispositional hearing held for the purpose of the parental rehabilitative plan." *In re Interest of J.H.,* 242 Neb. at 911, 497 N.W.2d at 352. See *In re Interest of J.S., A.C., and C.S.,* 227 Neb. 251, 417 N.W.2d 147 (1987) (pronouncing procedural rule requiring evidentiary hearing on record before court adopts rehabilitative plan, and reversing judgment and remanding matter for juvenile court to determine whether custody would be returned to parent, whether supervision of parental custody was warranted, and whether rehabilitation plan was necessary).

. . . "Fundamental fairness, at the very least, requires the adducing of appropriate evidence as a factual foundation for a rehabilitative plan which eventually may be used as a ground or condition for termination of parental rights." *In re Interest of J.H.,* 242 Neb. at 912, 497 N.W.2d at 352. In addition, the juvenile court's specific findings of fact supporting the provisions contained in the parental rehabilitative plan shall be stated in the record. *Id.* Although it appears that a rehabilitative plan was adopted on June 20, no findings of fact supporting its provisions are discernible from our de novo review of this

record. We once again reiterate that juvenile courts are courts of record and that a verbatim record of all proceedings is required. *In re Interest of D.M.B.,* 240 Neb. 349, 481 N.W.2d 905 (1992) (concluding that juvenile court's failure to find facts supporting rehabilitative plan it ordered was plain error).

*In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 252-53, 674 N.W.2d 442, 460-61 (2004).

Here, the nature of the adjudication governed Devon's use of drugs and the danger to Jokin as a result of Devon's continued drug use. Following an evidentiary hearing to determine the proper care, custody, and placement of services to be provided to, or for, Jokin, the court found that the permanency objective for Devon was reunification concurrent with adoption and ordered numerous provisions in the rehabilitation plan, including requiring Devon to complete domestic violence classes, obtain a psychological evaluation, and ordering drug services and treatment.

Devon objects to the provisions requiring domestic violence evaluation classes, obtaining a psychological assessment, and ordering a chemical dependency evaluation, arguing such provisions are not reasonably related to the objective of reunifying Devon with Jokin as related to matters leading to the adjudication. As previously addressed in our opinion, the State proved by a preponderance of the evidence that Devon's drug use and continued use placed Jokin at a risk of harm. Accordingly, we have performed a de novo review of the record to determine whether the provision of these contested assessments and services are reasonably related to the objective of reunifying Devon with Jokin. We hold that the order requiring Devon to undergo a chemical dependency evaluation and psychological evaluation is reasonably related to Devon's history of drug use and were reasonably made part of the rehabilitation plan. We recognize that Devon argues he previously submitted to a chemical dependency evaluation and that evaluation should suffice. Although there is some evidence in the record of Devon's participation in a chemical dependency evaluation and some level of treatment, it is unclear whether the results of these activities are sufficient in relation to the court's dispositional order governing this subject matter. When and how Devon successfully fulfills this obligation will be an issue for future dispositional hearings. For purposes of this appeal, we hold that the order to obtain a chemical dependency evaluation was a proper provision in this dispositional order meaning the provision was reasonably related to the basis for adjudication and the objective of reuniting Devon with Jokin.

That said, we fail to see a proper nexus in the record between Devon's prior drug use and the order to complete domestic violence classes. As the Supreme Court stated in *In re Interest of Mainor T. & Estela T., supra,* the juvenile court is required to set forth specific findings of fact in its order supporting the provisions contained in the parental rehabilitation plan. Because the juvenile court failed to set forth findings of fact which support the provision of domestic violence classes, and because in our de novo review, other than a single reference to the potential manipulation by Devon of Jokin's mother, there was a lack of evidence to support the court's order requiring Devon to complete domestic violence classes. We find an insufficient basis for the juvenile court to order the classes and therefore, we reverse and vacate that portion of the court's order requiring Devon to complete domestic violence classes.

CONCLUSION

We find that Jokin was properly adjudicated as a juvenile within the meaning of § 43-247(3)(a). We further affirm the juvenile court's June 18, 2018, dispositional order and rehabilitation plan with the exception that we reverse and vacate the portion of the rehabilitation plan that requires Devon to complete domestic violence classes.

AFFIRMED IN PART, AND IN PART
REVERSED AND VACATED.