IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 54542-0-II |
| JOEL MICHEAL KREBS, | |
| Petitioner. | UNPUBLISHED OPINION |

GLASGOW, C.J.—Joel Micheal Krebs and Tanner Birdsall were each convicted of second degree rape of SC in separate trials after they had intercourse with SC while she was intoxicated and incapable of consent. Krebs now seeks relief from personal restraint imposed following this 2016 conviction. He argues he is entitled to a new trial based on the ineffective assistance of his trial counsel, prosecutorial misconduct, and newly discovered evidence. For the first time in his reply brief, he argues that he is entitled to a new trial based on his counsel's failure to timely move to join his trial with Birdsall's trial and, alternatively, that he is entitled to resentencing based on the trial court's failure to meaningfully consider his youthfulness. We deny his personal restraint petition (PRP).

FACTS

After all three had consumed alcohol, Krebs and Birdsall raped SC while she was intoxicated and incapable of consent.[1] A jury found that Krebs had sexual intercourse with SC

---

[1] We described the underlying facts of the offense in greater detail in our opinion on direct appeal. *See State v. Krebs*, No. 49396-9-II, slip op. (Wash. Ct. App. Dec. 4, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2049396-9-II%20Order%20Amending%20 Opinion.pdf.

when she was "incapable of consent by reason of being physically helpless or mentally incapacitated." RCW 9A.44.050(1)(b).[2] The State tried Birdsall separately from Krebs, several months after Krebs's trial. Birdsall's first trial resulted in a hung jury, but he was convicted of second degree rape after a second trial.

## I. TRIAL

### A.     Pretrial Motions

Before trial, Krebs's counsel informed the trial court that he had witnesses prepared to testify that they had previously consumed alcohol with SC. Counsel explained that SC claimed "she rarely drinks and doesn't drink very much" and "her intoxication is a significant issue in this [case]," so these witnesses would be limited to impeaching SC on that matter. Pet'r's Reply Br., App. K at 5. The State moved in limine to exclude this testimony, and the trial court reserved ruling until after SC testified. One of the potential defense witnesses that Krebs listed was Jacob Izatt. *See id.* at 15.

Krebs also moved the day before trial for a continuance and to join Krebs's trial with Birdsall's pending trial. Counsel referenced a "freight train amount of information that [had] come forward in the last few days," including Birdsall's written statement to law enforcement. *Id.* at 25-26. Counsel requested time to "explore the possibility of a joint trial" and argued it may be appropriate to join the trials so that "everybody would have the opportunity and the benefit of all the testimony." *Id.* at 26. Because Birdsall's case remained pending, Birdsall refused to testify at Krebs's trial. The State asserted that Birdsall did not want to join the trials.

---

[2] The legislature amended RCW 9A.44.050 in 2021, but the amendments did not affect this subsection, so we cite to the current version of the statute.

The trial court noted that Krebs's case was already set and confirmed for trial, and it did not "see a possibility that Mr. Birdsall might want to be joined." *Id.* at 29. Accordingly, it denied Krebs's motion to continue and, to the extent it was before the court, denied the motion to consolidate.[3]

B.    Trial

In his opening statement, Krebs's counsel opined, "There's a reason that it's against the law to drink until you're 21 years old. And all three of these people were drinking and drinking a fair amount. The reason is, is that stupid things happen." Verbatim Report of Proceedings (VRP) (July 26, 2016) at 103. He described the events of the night as "alcohol-induced stupid decisions by kids, but nothing that wasn't willingly agreed to." *Id.* at 104.

SC testified at trial that she drank in high school "[m]aybe once or twice" but she "[n]ever really was a big drinker." VRP (July 26, 2016) at 37-38. She only drank Mike's Hard Lemonade because she did not like the taste of alcohol. SC also testified that alcohol "affects [her] pretty heavily," describing herself as "a lightweight" who starts to feel the effects of alcohol after "[t]wo, maybe three" drinks. *Id.* at 38.

SC told the jury that on the night of the offense, she had three or four bottles of Mike's Hard Lemonade. Then she started "falling down a lot" and "feeling really dizzy." *Id.* at 49. Eventually, she "couldn't stand." *Id.* at 50. SC testified that Krebs and Birdsall carried her into the bedroom and began to sexually assault her. She told the jury, "I couldn't move or really talk all

---

[3] Actually hearing the motion to consolidate on the merits would have required joining all affected parties, and Birdsall was not present at this time.

that much." *Id.* at 51. "I could barely keep my eyes open . . . . I felt kind of like paralyzed almost." *Id.* at 53.

When SC woke up the next morning, her vaginal area was in pain, but she could not remember what had happened the night before. SC went home and became "really sick really fast and vomited for a number of hours." *Id.* at 61. Later in the day, SC began to remember "little bits and pieces" of what had happened the night before. *Id.* She called her mother and told her the "few things that [she] could really remember at that time, which was just falling down, waking up, naked on the bed, alone." *Id.* at 63. SC's mother suggested that they go to the hospital for a sexual assault exam. While they were at the hospital, SC continued to remember additional details from the night before.

When discussing SC's decisions to go to the hospital and to report the rape to police, the prosecutor asked SC, "[D]id you have any thoughts about what that might mean for someone else if you didn't come forward?" *Id.* at 67. Before SC responded to this question, Krebs objected, and the trial court sustained the objection. There was no immediate limiting instruction.

On cross-examination, Krebs's counsel asked SC whether she had ever consumed alcohol with Izatt. The State objected, citing its pretrial motion, but the trial court overruled the objection and permitted SC to answer. SC responded, "No." *Id.* at 73. Krebs never called Izatt as a witness.

Sergeant Darrin Wallace testified at trial and described how he set up a recorded "confrontation call" whereby SC called Krebs and confronted him with her allegations. *Id.* at 102. The prosecutor asked Wallace, "[W]hat, if anything, stood out to you during the conversation?" *Id.* at 107. Wallace responded that Krebs repeatedly and adamantly denied any sexual contact with SC. Wallace continued, "[T]here [were] long pauses between her confrontation and his response.

Normal people that I've dealt with --." *Id.* At this point, Krebs objected, and the trial court sustained the objection. Wallace did not finish his sentence, and there was no immediate limiting instruction.

Krebs also testified in his defense. He said that SC probably had four bottles of Mike's Hard Lemonade over the course of a few hours. He testified that SC had been flirting with him and Birdsall and kissing them and that she consented to having sex with them. Krebs told the jury, "If I had any doubt in my mind that she did not want to have [] sex with me, I would not have had sex with her." VRP (July 27, 2016) at 168. Krebs also testified that SC had "fallen down," that he had brought her "a puke bucket and some water," and that he knew she was under the influence of alcohol. *Id.* at 162. He admitted that SC had thrown up.

The trial court instructed the jury, "The evidence that you are to consider during your deliberations consists of the testimony that you have heard from witnesses, stipulations, and the exhibits that [the court has] admitted, during the trial." State's Resp. to PRP, Attach. E. It also told the jury, "It is important . . . for you to remember that the lawyers' statements are not evidence." *Id.*

The jury's instructions defined "second degree rape" as "sexual intercourse with another person when the other person is incapable of consent by reason of being physically helpless or mentally incapacitated." *Id.* "A person is physically helpless when the person is unconscious or for any other reason is physically unable to communicate unwillingness to an act." *Id.* "Mental incapacity is a condition existing at the time of the offense that prevents a person from understanding the nature or consequences of the act of sexual intercourse whether that condition is produced by illness, defect, the influence of a substance, or by some other cause." *Id.*

The trial court further instructed the jury, "It is a defense to a charge of Rape in the Second Degree that at the time of the acts the defendant reasonably believed that [SC] was not mentally incapacitated or physically helpless. The defendant has the burden of proving this defense by a preponderance of the evidence," which "means that you must be persuaded, considering all of the evidence in the case, that it is more probably true than not true." *Id.*; *see also* RCW 9A.44.030(1).

In closing, Krebs's counsel lauded Krebs for testifying and reiterated the theme from his opening statement, saying, "I don't know how this case can't be about drinking and being dumb and being young. We were all there once." VRP (July 27, 2016) at 204. Counsel argued that the State failed to show SC was incapable of consent because she testified that she was aware of what was happening and "just being drunk isn't enough" to sustain a second degree rape conviction. *Id.* at 210. Counsel also highlighted that the jury could acquit Krebs based on evidence that he reasonably believed SC was able to consent.

The jury found Krebs guilty of second degree rape based on SC's incapacity to consent. At sentencing, Krebs's counsel suggested the bottom of the standard sentencing range would be "plenty" of punishment for "an 18-year-old high school senior under these circumstances." VRP (Sept. 9, 2016) at 40. The trial court imposed a minimum sentence of 7.5 years of confinement, which was the middle of the standard sentencing range, and a maximum sentence of life.

## II. DIRECT APPEAL

Krebs appealed his conviction and sentence to this court and raised several arguments, including that the State elicited improper opinion testimony from Sergeant Wallace, that the prosecutor committed misconduct during closing argument, and that Krebs's trial counsel was

6

ineffective for failing to request an exceptional downward sentence based on Krebs's youth. *Krebs*, No. 49396-9-II, slip op. at 12, 16, 24.

Krebs's claim of improper opinion testimony included a challenge to Wallace's use of the phrase "'normal people,'" arguing that it "implied guilt." *Id.* at 19. We held this was not improper opinion testimony because Wallace was merely "describing what made this confrontation call unique." *Id.* When he used the phrase "'normal people,'" Wallace did not "directly or indirectly comment that Krebs was guilty of anything. It [was] simply Wallace's explanation of what distinguished this call from others." *Id.*

We affirmed Krebs's conviction and sentence and remanded only for the trial court to amend his legal financial obligations.

## III. PRP

Krebs timely filed this PRP, arguing that ineffective assistance of trial counsel, prosecutorial misconduct, and newly discovered evidence entitled him to a new trial. Krebs attached SC's testimony from Birdsall's trials, an article on the neuroscience behind alcohol-induced blackouts, a retired toxicologist's expert testimony from Birdsall's trials, and a declaration from Izatt.

The neuroscience article that Krebs attached was titled, *What Happened? Alcohol, Memory Blackouts, and the Brain*, and was authored by a psychiatry professor at Duke University Medical Center.[4] Corrected PRP, App. F at 186. The article explained that alcohol primarily affects the brain's ability to transfer information from short-term to long-term memory. It defined "alcohol-

---

[4] Aaron M. White, Ph.D., *What Happened? Alcohol, Memory Blackouts, and the Brain*, 27 NAT'L INST. OF ALCOHOL ABUSE & ALCOHOLISM 186 (2003).

induced blackouts" as "episodes of amnesia, during which subjects are capable of participating even in salient, emotionally charged events—as well as more mundane events—that they later cannot remember." *Id.* at 188. And it distinguished between "en bloc blackouts," where people are "unable to recall any details whatsoever," and "fragmentary blackouts," where people "become aware that they are missing pieces of events only after being reminded that the events occurred. Interestingly, these reminders trigger at least some recall of the initially missing information." *Id.* "Research suggests that fragmentary blackouts are far more common than those of the en bloc variety." *Id.* Factors such as the rate at which a person's blood alcohol content (BAC) rises and whether they are female may make them more likely to experience some form of blackout.

David Predmore, a retired toxicologist who worked for the Washington State Toxicology Laboratory from 1971 until 1999, briefly testified at both of Birdsall's trials to estimate SC's BAC. Assuming SC consumed 4 or 5 bottles of Mike's Hard Lemonade over a period of 3 or 4 hours, Predmore estimated her peak BAC was somewhere between 0.08 and 0.14. "Most inexperienced persons, I would expect them to be showing definite signs of intoxication at a .14." Corrected PRP, App. I at 227. Predmore defined a "blackout" as "a period of time [when] you don't remember what happened." *Id.* at 224. He explained that a person's behavior will not necessarily change during the period of time that they will be unable to remember in a way that is "different than what you would have been observing anyway" due to their intoxication. *Id.* at 225. In other words, a person would "have no way of determining" whether someone else was experiencing a blackout. Corrected PRP, App. J at 943.

Izatt declared that he knew SC, Krebs, and Birdsall, that he attended several parties with SC during and after high school, and that she "would drink five to six drinks of hard alcohol" at

these parties. Corrected PRP, App. H at 2. Izatt claimed he had "observed [SC] drink alcohol . . . to the point of extreme intoxication and still be walking, talking, and partying." *Id.*

ANALYSIS

We will grant appropriate relief through a timely PRP where the petitioner shows that they are under unlawful restraint. RAP 16.4(a). But "the petitioner must meet a high standard before this court will disturb an otherwise settled judgment." *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011). Where the petitioner has had a previous opportunity for judicial review of their claim, they must show either a constitutional error that caused actual and substantial prejudice or a nonconstitutional error that resulted in a complete miscarriage of justice. *Id.*

I. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Krebs argues he was denied effective assistance of counsel at trial because his trial counsel failed to call an expert witness "familiar with unconsciousness and blackouts caused by intoxication to explain to the jury how the human brain works." Corrected PRP at 25-26. He claims this testimony was "essential to reconcile the testimony of SC" that she was very intoxicated "with Krebs' testimony that she appeared to be well aware of her surroundings and her conduct and that she knowingly participated in consensual sexual intercourse with him." *Id.* at 26. The crux of Krebs's argument appears to be that people who are experiencing a blackout "act in ways that appear normal to outsiders." *Id.* at 28.

Krebs also suggests that this expert testimony would have shown SC's statements to be unreliable because she was incapable of forming any memories of the offense. He claims "SC could not have recalled events that occurred when she was . . . blacked out" because "her brain was not functioning as a memory collector at that time." *Id.* at 32-33.

9

The State argues this is "an improper effort to relitigate a matter settled on appeal" and, regardless, Krebs's claim is without merit. State's Resp. to PRP at 5. "In this case, trial counsel may very well have wanted to avoid focusing on SC's impairment and her inability to consent." *Id.* at 9.

We did not resolve this claim on direct appeal. On appeal, Krebs argued only that his trial counsel was ineffective during sentencing. *See Krebs*, No. 49396-9-II, slip op. at 1. He did not allege ineffective assistance during trial. "We may consider a new ground for an ineffective assistance of counsel claim for the first time on collateral review." *In re Pers. Restraint of Khan*, 184 Wn.2d 679, 689, 363 P.3d 577 (2015) (plurality opinion); *see also id.* at 694 (Yu, J., concurring). Accordingly, we address the merits of this claim.

A.      Applicable Law

To succeed on a claim of ineffective assistance, Krebs must show that his trial counsel's performance was deficient and that the deficient performance prejudiced him. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012). "Deciding whether to call a witness is a matter of legitimate trial tactics that presumptively does not support a claim of ineffective assistance of counsel." *State v. Davis*, 174 Wn. App. 623, 639, 300 P.3d 465 (2013). We strongly presume that counsel's decisions were strategic. *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 252, 172 P.3d 335 (2007). But Krebs can rebut this presumption by showing the absence of a legitimate trial strategy to support his counsel's conduct. *Id.*

In a PRP, it is not enough to speculate that certain additional testimony "'might have been helpful.'" *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 701, 327 P.3d 660 (2014), *abrogated on other grounds by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018). The petitioner must show

that, had another witness been called, they "would likely have provided competent, admissible evidence establishing facts that would require relief." *Id.* If Krebs shows a reasonable probability that, but for his counsel's deficient performance in failing to call a witness, the outcome of the proceedings would have been different, then he will have "necessarily show[n] actual and substantial prejudice," as required to receive relief through a PRP. *Crace*, 174 Wn.2d at 842.

"A person is guilty of rape in the second degree when, under circumstances not constituting rape in the first degree, the person engages in sexual intercourse with another person . . . [w]hen the victim is incapable of consent by reason of being physically helpless or mentally incapacitated." RCW 9A.44.050(1)(b). Physical helplessness and mental incapacity are not alternative means. *State v. Al-Hamdani*, 109 Wn. App 599, 603-04, 36 P.3d 1103 (2001).

"Evidence which establishes a rape victim's inability to understand the nature and consequences of sexual intercourse is not the kind of technical evidence which requires medical testimony to decipher." *State v. Summers*, 70 Wn. App. 424, 429, 853 P.2d 953 (1993). In addition to expert testimony estimating the victim's BAC level at the time of the offense, lay testimony that the victim "was stumbling, vomiting and passing in and out of consciousness" can show that they were "debilitatingly intoxicated." *Al-Hamdani*, 109 Wn. App. at 609. Lay testimony describing a person's level of intoxication and the effects of that intoxication on their memory may be considered when determining whether they had the capacity to consent. *Nelson v. Duvall*, 197 Wn. App. 441, 457, 387 P.3d 1158 (2017).

A defendant may assert as a defense to any charge of rape based on the victim's mental incapacity or physical helplessness that "at the time of the offense the defendant reasonably believed that the victim was not mentally incapacitated and/or physically helpless." RCW

9A.44.030(1). This defense does not require the defendant "to prove that the victim could actually consent," only that the defendant "reasonably believed [the victim] could consent." *State v. Lozano*, 189 Wn. App. 117, 124, 356 P.3d 219 (2015). "[I]f the State proves beyond a reasonable doubt that a person cannot consent to sexual intercourse, the victim's words or conduct indicating freely given agreement to have sexual intercourse will not excuse the defendant's conduct." *Id.* at 125. But this evidence could still be relevant to support the defendant's reasonable belief defense, which must be proved by a preponderance of the evidence. RCW 9A.44.030(1); *Lozano*, 189 Wn. App. at 125-26 n.6.

B.    Krebs's Trial

Krebs fails to rebut the presumption that his trial counsel's decision not to call an expert toxicology witness was strategic. At trial, Krebs's counsel emphasized that all three people involved were drinking heavily, and he sought to minimize the charges against his client by describing them as "alcohol-induced stupid decisions by kids." VRP (July 26, 2016) at 104. Again in closing, he insisted that this case was about "drinking and being dumb and being young" and argued that "just being drunk isn't enough" to convict Krebs of rape. VRP (July 27, 2016) at 204, 210. Krebs's counsel aimed to minimize the effects of the intoxication on SC and to suggest to the jury that all three people were equally intoxicated and, therefore, equally responsible for the events that occurred. Expert testimony recalling the amount of alcohol SC consumed compared to her body size, estimating SC's BAC, theorizing about how that amount of alcohol affected SC, and describing in detail how alcohol affects a person's brain would likely have undermined Krebs's theory of the case and focused the jury's attention on SC's debilitated state. Therefore, Krebs's counsel's decision not to call an expert toxicology witness was likely strategic.

Krebs also fails to show prejudice. He emphasizes testimony that an expert witness gave at Birdsall's trials explaining that an observer would not necessarily be able to tell whether another person is experiencing an alcohol-induced blackout. But that expert never testified that an observer would be unable to tell when another person is extremely intoxicated. Rather, he said that when a person is experiencing a blackout, their behavior is not necessarily "different than what you would have been observing anyway" due to their intoxication. Corrected PRP, App. I at 225. Although Krebs insisted that SC had consented to the sexual intercourse, he also corroborated some of SC's testimony about her level of intoxication, including that he observed her falling down and throwing up. The jury did not require expert testimony to understand the implications of this behavior.

The jury was instructed that Krebs was guilty of second degree rape if he had sexual intercourse with SC while she was physically helpless or mentally incapacitated, meaning while she was unconscious, physically unable to communicate her unwillingness to have sexual intercourse, or prevented from understanding the nature or consequences of the act due to the influence of a substance. SC testified that during the rape, she "couldn't move or really talk all that much," "could barely keep [her] eyes open," and "felt kind of . . . paralyzed." VRP (July 26, 2016) at 51, 53. She also testified about her alcohol consumption prior to the rape and how it affected her, including that she was "falling down a lot," "feeling really dizzy," and "couldn't stand." *Id.* at 49-50. Krebs fails to show a reasonable probability that, had a toxicologist provided expert testimony, the jury would have made a different decision. It is not enough to speculate that certain additional testimony "'might have been helpful.'" *Cross*, 180 Wn.2d at 701.

Additionally, Krebs's argument that "SC could not have recalled events that occurred when she was . . . blacked out" because "her brain was not functioning as a memory collector at that

time" is contrary to the scientific article that Krebs attached to his PRP. Corrected PRP at 32-33. In that article, a psychiatry professor explained that blackouts may be "fragmentary," meaning people may only be "missing pieces of events." Corrected PRP, App. F at 188. A person who experienced a fragmentary blackout may also be able to recall some of the "initially missing information" when they are triggered by a reminder. *Id.* This scientific explanation is consistent with SC's testimony that she began to recall "little bits and pieces" of what had happened the night before and then continued to remember additional details throughout the day after the rape. VRP (July 26, 2016) at 61. Krebs fails to show ineffective assistance of counsel in this regard as well because he fails to show that an expert would have testified differently about fragmentary blackouts.

## II. PROSECUTORIAL MISCONDUCT

Krebs specifically challenges two questions that the prosecutor asked witnesses during trial. He argues the prosecutor asked SC a question that was "phrased to cause the factfinder to conclude that petitioner is a dangerous sex offender" and asked Sergeant Wallace a question that implied "the detective could determine from the confrontation call that [Krebs] was guilty." Corrected PRP at 33. Krebs further argues that his trial counsel was ineffective because counsel failed to move to strike the improper questions or move for a mistrial.

The State again asserts that Krebs is asking the court to relitigate a matter settled on direct appeal, and it argues that he fails to provide support for his allegations. On direct appeal, Krebs argued the prosecutor committed misconduct during closing argument. *See Krebs*, No. 49396-9-II, slip op. at 1. He did not specifically challenge the prosecutor's conduct when questioning

witnesses. He did, however, challenge Wallace's testimony and argue that it implied Wallace believed Krebs was guilty. *See id.* at 16.

To prove prosecutorial misconduct, Krebs must show that "the prosecutor's conduct was both improper and prejudicial." *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). Because Krebs objected to both instances of alleged misconduct, he may show prejudice by showing a substantial likelihood that the prosecutor's improper conduct affected the jury's verdict. *Id.* at 760. Because Krebs is raising these claims on collateral review, he must also show that the prejudice was actual and substantial. *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 496, 251 P.3d 884 (2010).

A.      Question to SC

The prosecutor asked SC whether she had "any thoughts about what [it] might mean for someone else if [she] didn't come forward" and report the rape to police. VRP (July 26, 2016) at 67. Before SC could respond, Krebs objected, and the trial court sustained the objection. Even assuming the prosecutor's question was improper, Krebs fails to show prejudice.

Division One has held that a defendant failed to establish prejudice where his objections to the prosecutor's comments were sustained and the trial court instructed the jury to disregard any questioning that was ruled inadmissible. *State v. Edvalds*, 157 Wn. App. 517, 525, 237 P.3d 368 (2010). We presume the jury follows the court's instructions. *Id.*

Here, Krebs objected to the prosecutor's question before SC offered any responsive testimony for the jury to consider, and the trial court sustained the objection. Although Krebs did not move to strike the question or request a curative instruction at that time—perhaps in an effort not to call additional attention to the question—the trial court instructed the jury before its

deliberations that the evidence for it to consider consisted of the witness testimony, stipulations, and admitted exhibits. The trial court specifically reminded the jury that "the lawyers' statements are not evidence." State's Resp. to PRP, Attach. E.

SC was precluded from offering any testimony in response to the question, the prosecutor's question was not evidence for the jury to consider during its deliberations, and we presume the jury followed its instructions. Krebs fails to show that this alleged misconduct affected the outcome of his trial.

B.      Question to Sergeant Wallace

The prosecutor asked Sergeant Wallace whether anything "stood out" to him about the confrontation call he listened to between SC and Krebs. VRP (July 26, 2016) at 107. Wallace recalled Krebs repeatedly and adamantly denying any sexual contact and "long pauses" between SC's statements and Krebs's responses. *Id.* He continued, "Normal people that I've dealt with --," but Krebs objected before Wallace completed his sentence, and the trial court sustained the objection. *Id.* This challenge fails because Krebs is precluded from recasting an argument that was decided on direct appeal.

An issue that was raised and rejected on the merits on direct appeal cannot be raised again in a PRP, "unless we determine that the interests of justice require relitigation of this issue." *In re Pers. Restraint of Knight*, 196 Wn.2d 330, 341, 473 P.3d 663 (2020). "A petitioner may not avoid this requirement 'merely by supporting a previous ground for relief with different factual allegations or with different legal arguments.'" *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013) (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671, 101 P.3d 1 (2004)). For example, "[a] defendant may not recast the same issue as an ineffective assistance

claim; simply recasting an argument in that manner does not create a new ground for relief or constitute good cause for reconsidering the previously rejected claim." *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 720, 16 P.3d 1 (2001).

On direct appeal, we addressed a claim that Wallace gave improper opinion testimony because his "use of the phrase 'normal people' implied guilt." *Krebs*, No. 49396-9-II, slip op. at 19. We held that Wallace testified to his opinion on "what made this confrontation call unique," but he did not testify improperly because "his use of the phrase 'normal people'" did not "directly or indirectly comment that Krebs was guilty of anything. It [was] simply Wallace's explanation of what distinguished this call from others." *Id.* Krebs may not recast this improper opinion testimony claim from his direct appeal as a prosecutorial misconduct claim in his PRP. Supporting a previously considered ground for relief with a different legal argument "does not create a new ground for relief or constitute good cause for reconsidering the previously rejected claim." *Stenson*, 142 Wn.2d at 720.

C.      Ineffective Assistance

Krebs argues that his trial counsel's failure to move to strike the prosecutor's questions or to request a mistrial constituted ineffective assistance, and this argument also fails. Krebs insists, "'When an objection is sustained with no further motion to strike the testimony and no further instruction for the jury to disregard the testimony, the testimony remains in the record for the jury's consideration.'" Pet'r's Reply Br. at 6-7 (quoting *State v. Stackhouse*, 90 Wn. App. 344, 361, 957 P.2d 218 (1998)). But the challenged questions here did not result in any improper testimony.

Contrary to showing deficient performance, the record shows that Krebs's counsel promptly objected to both instances of alleged prosecutorial misconduct, the objections were

sustained, and the State's witnesses were therefore precluded from offering any responsive testimony that may have been inappropriate for the jury to consider. Krebs fails to show any ineffective assistance.

### III. NEWLY DISCOVERED EVIDENCE

Krebs claims he is entitled to a new trial based on the newly discovered evidence of a witness, Izatt, who would have impeached SC's testimony regarding her prior experiences consuming alcohol. According to Krebs's PRP, "Trial counsel obviously did not know of the existence of Mr. Izatt and/or his relationship with SC. Had he known . . . , he would have called [Izatt] as a witness." Corrected PRP at 36. In reply, Krebs seeks to reframe this argument as an ineffective assistance of counsel claim and argue that trial counsel failed to investigate SC's tolerance of alcohol. Neither claim is supported by the record.

A petitioner's restraint is unlawful if "[m]aterial facts exist which have not been previously presented and heard, which in the interest of justice require vacation of the conviction." RAP 16.4(c)(3). To prevail on a request for a new trial based on newly discovered evidence, Krebs must show, among other things, that the evidence was discovered after the trial and that it could not have been discovered before trial using due diligence. *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 569, 397 P.3d 90 (2017). "We can certainly defer to a trial lawyer's decision against calling witnesses if that lawyer investigated the case and made an *informed* and reasonable decision against conducting a particular interview or calling a particular witness." *State v. Jones*, 183 Wn.2d 327, 340, 352 P.3d 776 (2015).

The record shows that Krebs was aware of Izatt as a potential witness *prior* to the start of trial *and* that he was prepared to offer testimony impeaching SC regarding her prior experience

with alcohol. *See* Pet'r's Reply Br., App. K at 5 (informing the trial court that counsel was prepared to offer testimony to impeach SC's statements that "she rarely drinks and doesn't drink very much"); *id.* at 15 (listing Izatt as a potential defense witness for Krebs's trial). The record does not support Krebs's characterization of Izatt's potential testimony as newly discovered evidence.

Before Krebs's trial, the State moved to exclude evidence impeaching SC on her prior experience with alcohol, and the trial court reserved ruling. *See Krebs*, No. 49396-9-II, slip op. at 21. But Krebs did not attempt to offer this evidence after SC testified at trial. *Id.* It is likely that Krebs's counsel decided not to call Izatt as a witness because, on cross-examination, SC denied ever drinking with Izatt. The record shows that counsel specifically investigated witnesses who could impeach SC on the topic of her alcohol consumption and made an informed decision not to call Izatt as a witness after the trial began. Krebs's ineffective assistance argument also fails.

## IV. REPLY

Krebs raises two additional arguments for the first time in his reply brief. He argues that trial counsel was ineffective for failing to timely move to join Krebs's trial with Birdsall's trial because Birdsall would have corroborated Krebs's testimony that SC "appeared to be capable of consent." Pet'r's Reply Br. at 12. And Krebs argues that he is entitled to resentencing "given the changes in law related to youthful mitigators." *Id.* at 17.

A reply brief should "be limited to a response" to issues already raised. RAP 10.3(c). Generally, we will not review issues raised for the first time in a reply. *Bergerson v. Zurbano*, 6 Wn. App. 2d 912, 926, 432 P.3d 850 (2018). We have discretion to consider a claim on the merits "despite technical flaws" where doing so would "'serve the ends of justice.'" *Id.* (quoting RAP

No. 54542-0-II

1.2(c)). However, Krebs has not shown that reaching these additional arguments would serve the ends of justice.

CONCLUSION

We deny Krebs's PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, C.J.

We concur:

Cruser, J.

Price, J.

20