Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/16/2022 08:05 AM CST

In re Interest of Gunner B., a child
under 18 years of age.
State of Nebraska, appellee, v.
Gunner B., appellant.

___ N.W.2d ___

Filed October 21, 2022.    No. S-21-949.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.

Appeal from the County Court for Otoe County: ROBERT B. O'NEAL, Judge. Affirmed.

Angela M. Minahan, of Reinsch, Slattery, Bear, Minahan & Prickett, P.C., L.L.O., for appellant.

Jenniffer Panko-Rahe, Otoe County Attorney, and Seth W. Hawkins for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

HEAVICAN, C.J.

## INTRODUCTION

The State of Nebraska filed a petition against the appellant, Gunner B., alleging that he was a child within the meaning of Neb. Rev. Stat. § 43-247(1) (Reissue 2016). The petition

further alleged that Gunner had committed sexual assault in the third degree against M.M. as that crime is set forth in Neb. Rev. Stat. § 28-320(1) and (3) (Reissue 2016). Following an adjudication hearing, the Otoe County Court, sitting as a juvenile court, entered an order finding that Gunner was a child within the meaning of § 43-247(1). The case was set for disposition, and Gunner also moved for a new trial. The juvenile court denied Gunner's motion for new trial, and he appealed. We moved this case to our docket. We affirm.

FACTUAL BACKGROUND

On September 22, 2020, the State filed a petition which alleged that Gunner came within the meaning of § 43-247(1) as a juvenile who has committed an act which would constitute a misdemeanor, infraction, or violation of a city or village ordinance and who was 11 years of age or older at the time the act was committed. The petition also alleged that Gunner had violated § 28-320(1) and (3) by subjecting M.M. to sexual contact when he either knew or should have known that M.M. was physically or mentally incapable of resisting or appraising the nature of such conduct.

A hearing was held on the matter on September 16, 2021. The evidence presented showed that M.M. is the daughter of Tia T. and Nicholas M. M.M.'s precise date of birth is not evident from the record. However, it appears that at the time of the proceedings in this case, M.M. was 6 years old, but had been 5 years old in July 2020, when the alleged event occurred. Gunner is Tia's half brother. Again, the record is not perfectly clear, but it seems that Gunner was 15 years old at the time of these events and was 16 years old at the time of the adjudication hearing.

On July 31, 2020, Nicholas arrived at the home of Cheryl S., the mother of both Gunner and Tia, to pick up M.M. After calling out M.M.'s name and not getting a response, Nicholas went into the basement to look for M.M. According to Nicholas, Gunner was sitting on the floor with his legs over M.M.'s legs,

rubbing M.M.'s vagina with his fingers. According to Nicholas, an erection was visible through Gunner's shorts. Nicholas left with M.M. and later took her to a hospital for a sexual assault examination. The report showed no male DNA or semen, and M.M. did not make any statements against Gunner at any point during these proceedings.

Gunner testified and denied touching M.M. in a sexual manner. Gunner claimed that M.M. was urinating into the floor drain at the time Nicholas entered the basement. Gunner also testified that Nicholas smelled of marijuana and was acting erratically when he left the house with M.M.

Tia testified that she had been in a relationship with Nicholas for about 9 years and that both she and Nicholas had dealt with addiction prior to meeting each other. After they began dating, Tia and Nicholas decided to get sober together. While the two have largely refrained from any use of methamphetamine since 2013, they both continue to drink on occasion. According to Tia, Nicholas had a brief relapse during their relationship and admitted to smoking marijuana at his grandfather's funeral. The two had also previously shared a "THC . . . vaping pen" with friends at a backyard get-together.

Cheryl testified that M.M. has a history of urinating into the floor drain in the basement bathroom of Cheryl's home and that M.M. continued this behavior despite having been reprimanded for doing so in the past. Cheryl testified that after Nicholas left her home with M.M. on the day of the incident, Gunner called to tell her what happened and explained that M.M. had been urinating into the floor drain. Cheryl also testified that a few days prior to the July 2020 incident, Nicholas had smelled of marijuana and Cheryl had asked him to leave her home.

On September 28, 2021, the juvenile court issued an order finding that Gunner was a child within the meaning of § 43-247(1). The juvenile court scheduled a dispositional hearing for December 2021. Gunner moved for a new trial in October 2021, arguing that the decision was not sustained

by sufficient evidence. Gunner's motion was denied by the juvenile court on October 28. Gunner appeals from the court's adjudication order.[1] According to statements made at oral argument in this case, Gunner's dispositional hearing had not yet been held.

## ASSIGNMENTS OF ERROR

Gunner has assigned, restated and renumbered, that the juvenile court erred in finding that he subjected M.M. to sexual contact because the evidence presented at trial was insufficient to (1) prove that M.M. was mentally or physically incapable of resisting or appraising the nature of the conduct or that Gunner knew or should have known of that lack of capacity, (2) prove sexual arousal or gratification of either party, and (3) support a finding of guilt beyond a reasonable doubt.

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.[2] When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.[3]

## ANALYSIS

### M.M.'s MENTAL OR PHYSICAL CAPACITY

Gunner first assigns that the State failed to prove, beyond a reasonable doubt, that he knew or should have known that

---

[1] See *In re Interest of Jedidiah P.*, 267 Neb. 258, 673 N.W.2d 553 (2004). See, also, *In re Interest of Jordan B.*, 300 Neb. 355, 913 N.W.2d 477 (2018); *In re Interest of Ashley W.*, 284 Neb. 424, 821 N.W.2d 706 (2012); *In re Interest of C.H.*, 277 Neb. 565, 763 N.W.2d 708 (2009); *In re Interest of Tyler F.*, 276 Neb. 527, 755 N.W.2d 360 (2008); *In re Interest of Jeffrey K.*, 273 Neb. 239, 728 N.W.2d 606 (2007); *In re Interest of M.L.S.*, 234 Neb. 570, 452 N.W.2d 39 (1990).

[2] *In re Interest of K.M.*, 299 Neb. 636, 910 N.W.2d 82 (2018).

[3] *Id.*

M.M. was mentally or physically incapable of resisting or appraising the nature of the conduct as set forth in § 28-320(1).

In *In re Interest of K.M.*,[4] this court discussed the lack-of-capacity defense under Neb. Rev. Stat. § 28-319(1)(b) (Reissue 2016) that a defendant "knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct." The language at issue in *In re Interest of K.M.* is nearly identical to the language of § 28-320(1)(b), which is at issue here.

In *In re Interest of K.M.*, we held that

> to prove a lack-of-capacity sexual assault on the basis of a mental impairment . . . the State must prove beyond a reasonable doubt that the victim's impairment was so severe that he or she was "mentally . . . incapable of resisting" or "mentally . . . incapable of . . . appraising the nature of" the sexual conduct with the alleged perpetrator.[5]

We further held that while expert testimony was admissible, and might in some circumstances be necessary, it was not required in each case.[6]

The State argues that it presented sufficient evidence when it produced evidence that M.M. was only 5 to 6 years old. While acknowledging the absence of Nebraska case law holding that "young age alone can satisfy the incapable element,"[7] the State directs this court to decisions holding as much in other jurisdictions, highlighting the Pennsylvania Supreme Court's case in *Com. v. Rhodes*.[8]

In *Rhodes*, a Pennsylvania statute criminalized sexual intercourse with any person "'who is so mentally deranged or deficient that such person is incapable of consent'"[9]—which

---

[4] *Id.*

[5] *Id.* at 646, 910 N.W.2d at 89.

[6] See *In re Interest of K.M., supra* note 2.

[7] Brief for appellee at 11.

[8] *Com. v. Rhodes*, 510 Pa. 537, 510 A.2d 1217 (1986).

[9] *Id.* at 544, 510 A.2d 1220.

language is similar to Nebraska's defense under § 28-320(1)(b) as interpreted by this court in *In re Interest of K.M.* The Pennsylvania Supreme Court found that age fit within this definition and concluded that, as a matter of law, an 8-year-old child was "'so mentally deficient,' . . . that she was incapable of consenting to an act whose nature she could not appreciate or comprehend."[10]

Other courts have come to conclusions similar to the one made by the *Rhodes* court, finding that young children are incapable of understanding the nature of sexual conduct as a matter of law and, further, that the view that underage children cannot legally consent to sex comes from the common law.[11] Along the same lines, the U.S. Court of Appeals for the Seventh Circuit has observed that "[c]ertainly, many children, and *indisputably all children under a certain age*, are incapable of appraising the nature of sexual conduct."[12]

We agree with this reasoning. We find that common sense alone establishes that a child of 5 or 6 years of age is among those that are "indisputably" under an age when children are capable of appraising the nature of sexual conduct.[13] Moreover, we note that the Legislature has generally acknowledged that children under a certain age simply lack capacity to understand or be responsible for their actions.[14] Accordingly, we hold that the State adequately proved in this case that M.M. was mentally incapable of appraising the nature of the sexual conduct at issue.

We need not, and therefore do not, establish in this case any particular age under which a child is incapable of appraising the nature of sexual conduct. Consequently, to the extent the State attempts to establish in future cases that an older alleged

---

[10] *Id.* at 559, 510 A.2d at 1228.

[11] *In re B.W.*, 313 S.W.3d 818 (2010) (collecting cases).

[12] *U.S. v. Walker*, 931 F.3d 576, 582 (7th Cir. 2019) (emphasis supplied).

[13] See *id.*

[14] See § 28-320(1)(b).

child victim was incapable of appraising the nature of sexual conduct, it may be advisable to adduce evidence regarding the development and understanding of that particular child.

We therefore turn to the question of whether Gunner knew or should have known of this lack of capacity. Gunner testified that he knew M.M. as his niece, or as the daughter of his sister, and his testimony confirmed that he was aware of her age. Gunner also indicated that he had previously babysat M.M. for Tia. When asked if he had touched M.M. in the way alleged by the petition, Gunner replied that he would "never" do that, suggesting that he was aware that such behavior was not acceptable.

We therefore conclude that Gunner should have known that M.M. was mentally incapable of resisting or appraising the nature of Gunner's conduct. This assignment of error is without merit.

### EVIDENCE OF SEXUAL AROUSAL
### OR GRATIFICATION

Gunner next assigns the evidence was insufficient to establish that he touched M.M. for the purpose of sexual arousal or gratification. As used in § 28-320, sexual contact "includes only such conduct which can be *reasonably construed* as being for the purpose of sexual arousal or gratification of either party."[15]

Gunner centers his argument on *In re Interest of Kyle O.*,[16] a 2005 case wherein the Nebraska Court of Appeals explained in detail what type of evidence or circumstances must be considered by a court in determining whether a minor's conduct can be reasonably construed as being for the purpose of sexual arousal or gratification. Gunner contends that the State failed to present any evidence related to Gunner's age or maturity and that thus, per the standards laid out in *In re Interest*

---

[15] See Neb. Rev. Stat. § 28-318(5) (Supp. 2019) (emphasis supplied).

[16] *In re Interest of Kyle O.*, 14 Neb. App. 61, 703 N.W.2d 909 (2005).

*of Kyle O.*, the court cannot have reasonably inferred that Gunner's actions were intended to sexually gratify or arouse either M.M. or himself.

In *In re Interest of Kyle O.*, a 14-year-old child, Kyle O., was adjudicated under § 43-247 for sexual contact with a 5-year-old child, S.S., in violation of § 28-320.[17] A witness observed Kyle standing outside with S.S. and three other children. Kyle then pulled down S.S.' pants and grabbed S.S.' penis to show the other children "'how small it was.'"[18] At trial, the witness was asked whether it looked like the contact was for sexual gratification, and the witness responded that he did not know.[19]

On appeal, Kyle asserted that the evidence was insufficient to establish whether sexual contact had occurred, because there was no evidence that Kyle had touched S.S.' penis for sexual gratification. The Court of Appeals reversed the adjudication and remanded the cause with directions to dismiss, finding that there was no evidence that Kyle was sexually aroused and that yet, "[i]t would be very easy to construe Kyle's conduct as being for the purpose of humiliating, bullying, or annoying S.S."[20]

We find *In re Interest of Kyle O.* inapplicable. In that case, there was no evidence regarding sexual arousal. But here, the State presented, and the court found credible, testimony from Nicholas that Gunner had an erection visible through his clothing while touching M.M.'s vagina.

After observing the witnesses and hearing their testimony, the juvenile court accepted Nicholas' version of the facts over Gunner's version, a credibility determination to which we defer on appeal. Nicholas' testimony showed that Gunner was visibly aroused at the time he was touching M.M. As such, his

---

[17] *Id.*

[18] *Id.* at 63, 703 N.W.2d at 911.

[19] *In re Interest of Kyle O., supra* note 16.

[20] *Id.* at 72, 703 N.W.2d at 918.

actions could reasonably be construed as being for his own sexual arousal or gratification. We find this assignment of error without merit.

### Sufficiency of Evidence

Finally, Gunner assigns that even when viewed in a light most favorable to the prosecution, the State's evidence and witnesses do not eliminate reasonable doubt as to whether Gunner committed a sexual assault in the third degree against M.M. because the State's evidence either lacked credibility or conflicted with other credible evidence presented by Gunner.

Gunner argues that Nicholas' testimony, in which he stated that he saw the assault occur, directly conflicts with Gunner's own testimony, where Gunner denied touching M.M. in a sexual manner. Gunner also argues that Nicholas' testimony is in conflict with his own prior statements because Nicholas testified that he saw Gunner touching M.M. in a sexual manner and that an erection was visible through Gunner's shorts at the time. But when Nicholas texted Cheryl immediately following the incident, he did not mention that Gunner had an erection and also did not include this piece of information in his statement to police.

The standard of review for juvenile cases is de novo on the record; however, when evidence is in conflict, this court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.[21]

Here, the juvenile court found that Nicholas' testimony regarding what happened and what he witnessed firsthand was more credible than either Gunner's version of events or Cheryl's testimony. Nicholas stated that he saw Gunner touching M.M.'s sexual or intimate parts. He testified to factors that would indicate Gunner was committing this act for sexual arousal or gratification, as evidenced by Nicholas' testimony that Gunner had a visible erection while touching M.M. While

---

[21] See *In re Interest of K.M., supra* note 2.

Nicholas' testimony was directly contradicted by Gunner, the juvenile court observed the witnesses and accepted one version of the facts over the other. We give weight to the court's observations and determinations, and when viewed in this light, the evidence is sufficient to prove Gunner's guilt beyond a reasonable doubt. This assignment of error is without merit.

## CONCLUSION

We affirm the decision of the juvenile court.

Affirmed.