IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF LUKAH C. ET AL.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF LUKAH C. ET AL., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

CYNTHIA C., APPELLANT, AND VICTOR M. AND SAMANTHA D., APPELLEES.

Filed November 19, 2024.    No. A-24-372.

Appeal from the Separate Juvenile Court of Douglas County: MATTHEW R. KAHLER, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Nicole J. Tegtmeier for appellant.

Jackson Stokes, Deputy Douglas County Attorney, for appellee State of Nebraska.

PIRTLE, BISHOP, and ARTERBURN, Judges.

PIRTLE, Judge.

## INTRODUCTION

Cynthia C. appeals the adjudication order of the separate juvenile court of Douglas County that found her child, Kaivian, was within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) and was at a risk of harm. For the reasons that follow, we affirm.

## BACKGROUND

Cynthia is the biological mother to five children. She gave birth to Kaivian on December 7, 2021, while she was residing at Family Works, an inpatient substance abuse treatment facility. When Kaivian was born, Cynthia's four other children were already in the custody of the Department of Health and Human Services (DHHS). On, December 10, due to Cynthia's prior problems and history of substance abuse, the State filed a fourth supplemental petition alleging

- 1 -

that Kaivian lacked proper parental care by reason of the fault or habits of Cynthia and was within the meaning of § 43-247(3)(a). Specifically, the State alleged:

> [Kaivian] lacks proper parental care by reason of the fault or habits of [Cynthia], mother of said juvenile, to wit:
>
> (a) [Cynthia] is under the jurisdiction of the Douglas County Juvenile Court under docket JV 19-1352.
>
> (b) [Cynthia] has a history of substance abuse issues.
>
> (c) [Cynthia] is currently participating in inpatient substance abuse treatment at Family Works.
>
> (d) [Cynthia] has not alleviated the issues for which she is under the jurisdiction of the Douglas County Juvenile Court.
>
> (e) Due to the above allegations, said juvenile is at risk for harm.

The State also filed an ex parte motion for immediate temporary custody asking the court to place Kaivian in the custody of DHHS, with placement to exclude Cynthia's home, but to allow Kaivian to live with Cynthia at Family Works. The juvenile court granted this motion.

On December 21, 2021, Cynthia entered a plea of denial to the allegations in the fourth supplemental petition. Kaivian remained in the custody of DHHS and was placed with Cynthia at Family Works.

On March 22, 2022, the court entered an order for change of placement allowing Cynthia to be discharged from Family Works and transition into her own housing. The court allowed Kaivian to remain in Cynthia's care.

However, after securing her own housing, Cynthia allowed her girlfriend, Mandy Wendland to live with her. This presented an issue because her case manager was unaware of this relationship and Wendland was not approved to live with Kaivian. In early August 2022, DHHS conducted a background check on Wendland and discovered that she had a significant criminal history, a history of substance abuse, and previously lost the rights to her own children. But most significantly, the background check revealed that Wendland had been incarcerated several days prior for the destruction of Cynthia's property. Reports of the incident showed that on July 30, with Kaivian present, Cynthia and Wendland had a domestic dispute where Wendland broke a window in an attempt to enter the home. As a result, Cynthia called law enforcement and Wendland was arrested. As part of the subsequent criminal case against her, Wendland was ordered to not have contact with Cynthia.

After the discovery of this incident, on August 4, 2022, the State filed an amended fourth supplemental petition alleging Kaivian came within the meaning of § 43-247(3)(a). The State contended Kaivian was at a risk for harm due to Cynthia's history of substance abuse, participation in domestic violence in his presence, and failure to alleviate the issues for which she was under the juvenile court's jurisdiction. The State also filed an ex parte motion for immediate custody and pick-up. The juvenile court granted the State's motion and ordered Kaivian to remain in the temporary custody of DHHS. The juvenile court later held a hearing regarding Kaivian's placement, and on August 24 the court found it was in his best interests to remain in DHHS custody.

On February 6, 2023, an adjudication hearing was held on the State's amended fourth supplemental petition. However, during the hearing that petition was dismissed, and the State filed a fifth supplemental petition on the same day. The only change within the fifth supplemental petition was an additional allegation that Cynthia "continues to have contact with Mandy Wendland." A protective custody hearing was then held on February 14 and February 24. On February 24, the fifth supplemental petition was amended by interlineation so that it became the sixth supplemental petition.

On March 17, 2023, the court found there was probable cause to believe Kaivian came within the meaning of § 43-247(3)(a) and that it was in his best interests to remain in the temporary custody of DHHS. Cynthia appealed this order, and we affirmed the court's ruling. See *In re Interest of Lukah C. et al.*, No. A-23-300, 2023 WL 8590735 (Neb. App. Dec. 12, 2023) (selected for posting to court website).

The court then held an adjudication hearing on the State's sixth supplemental petition over the course of 3 days in March and April 2024. At this hearing, the State called Ashley Starostka and Allyson Hoover as witnesses and Cynthia testified on her own behalf.

Starostka previously worked for DHHS and worked on Cynthia's case from September 2022 to February 2024. She provided substantial testimony concerning Cynthia's relationship with Wendland. She said that they met in 2019 and were in an on-and-off relationship for multiple years. But sometime around the summer of 2022, an incident occurred where Wendland performed sexual acts on someone in front of Cynthia for drugs. Cynthia expressed that she started to avoid Wendland after this incident because it traumatized her and Wendland triggered those emotions. However, Wendland guilted Cynthia into letting her live with her and refused to leave when Cynthia asked.

Starostka then recounted what Cynthia told her about the July 30, 2022, incident where Wendland broke the window. Cynthia claimed that Wendland was being too loud and woke up Kaivian, so she made her leave the apartment. However, Wendland refused to leave so Cynthia physically pushed her out of the door. After that, Cynthia said Wendland accidently broke the window while trying to get her attention from outside. Cynthia stated that Kaivian did not witness any of this because he was asleep in the back bedroom.

Starostka noted that what Cynthia told her did not match the police report but did not clarify what the discrepancies were. Nevertheless, Starostka stated that she was concerned about Cynthia not being truthful because it indicated an unwillingness to be honest with her.

Starostka also described another incident which occurred on August 23, 2022. During this incident, Cynthia claimed she was in a car accident near Wendland's mother's house. Following the accident, Cynthia said she went to Wendland's mother's house for help but had a physical altercation with Wendland. Like the previous incident, Starostka stated that Cynthia's description did not match the police reports. Nevertheless, Wendland was arrested and incarcerated until October 25.

Several weeks after that incident, Starostka was still concerned about Cynthia's contact with Wendland. Because of this, she reviewed Wendland's jail calls which revealed approximately 25 calls between Cynthia and Wendland since her arrest. Additionally, around this time, one of Cynthia's other children was found with Wendland's debit card. This was concerning because Cynthia claimed that she had not had any contact with Wendland since July 2022.

In November 2022, Cynthia informed Starostka that she secured a job providing care to Wendland's sister. Also, during this time, Cynthia was seen driving Wendland's mother's vehicle. While she told Starostka that these connections did not impact her ability to set boundaries with Wendland, Starostka had significant doubts. In particular, she believed that Cynthia becoming enmeshed in Wendland's family exhibited a pattern typical of domestic abuse victims.

Also, around October and November 2022, Starostka received reports that Cynthia was in contact with the father of one of her children, Juan Barbosa. Due to Barbosa's history of domestic abuse, the court had previously barred Cynthia from having contact with him. However, family support workers, one of the children's foster parents, and the children informed Starostka that Cynthia was communicating with Barbosa. When Starostka confronted Cynthia about this contact, she expressed that it was "stupid that she couldn't have contact with . . . the father of her son."

In December 2022, Cynthia admitted to Starostka that she had been in contact with Wendland since she was released from jail in October. Despite this honesty, her lying about the relationship for the last 4 months concerned Starostka. Cynthia was then enrolled in a domestic violence course and continued therapy, but still maintained contact with Wendland. In January 2023, Starostka found a Facebook post of Wendland at Cynthia's apartment. And in February, a family support worker saw her leaving the apartment prior to one of Cynthia's supervised visits.

Starostka explained that Kaivian was not safe to return to Cynthia's care as long as she maintained her relationship with Wendland and lied about it. She articulated that although Cynthia had taken several domestic violence courses, her actions demonstrated an inability to resolve the problems that led to Kaivian's removal. Specifically, Cynthia was still struggling with being honest, setting appropriate boundaries, and forming healthy relationships. More so, Starostka believed that Cynthia lacked insight into why her relationship with Wendland was unsafe. She essentially said that if Cynthia lacked that insight and continued to be dishonest about the relationship, there was not much she could do to help. Overall, Starostka explained that Cynthia's continued contact with Wendland and failure to make progress toward her goals posed safety risks for Kaivian.

Hoover works for DHHS and has been involved in Cynthia's case from its inception in August 2019. She stated Cynthia informed DHHS about her relationship with Wendland around July 2022 and helped facilitate the background check on her. When the July 30, 2022, incident was discovered, Cynthia told Hoover that Wendland was trying to get her attention when she accidentally broke the window. She claimed that she called the police because she was startled and filed the report to make Wendland pay for the window. Notably, Cynthia's account did not mention the physical altercation that occurred beforehand. Hoover stated that Cynthia did not address this discrepancy when confronted but was confused about why Kaivian was removed.

Hoover explained that she was concerned about the incident because it showed Cynthia's lack of progress in addressing her risks for domestic violence. She stated that although Cynthia completed a domestic violence course and was receiving other services, she demonstrated an inability to protect Kaivian. Additionally, Hoover was concerned that Cynthia bailed Wendland out of jail and left Kaivian with Wendland's mother. Notably, Cynthia and Wendland's mother had a dispute 5 days prior where Cynthia had to call the police because Wendland's mother refused to leave. Despite this recent quarrel, Hoover stated that Cynthia failed to understand why leaving

Kaivian with Wendland's mother was a problem. In response, Hoover told her that if she could not understand the problem, she could not ensure Kaivian's safety.

Hoover also discussed her concerns regarding Wendland's history of substance abuse. She essentially stated that although Wendland was in recovery, her history of addiction could negatively impact Cynthia's recovery. Cynthia denied that this was an issue, which raised further concerns for Hoover because Cynthia continued to not understand that her relationship with Wendland threatened her, her children, and her sobriety.

Overall, Hoover stated that although Cynthia had made progress with her substance abuse issues and improved the condition of her home, she still struggled with consistently attending therapy, addressing her mental health problems, mitigating the risks for domestic violence, and understanding the risks posed by her relationship with Wendland. Due to these risks, she did not believe Kaivian could safely return to Cynthia's home.

Cynthia then testified on her own behalf. She stated that she rekindled her relationship with Wendland about a month after she left Family Works in March 2022. She said that she had multiple conversations with her case manager at the time about Wendland and had never been told that she could not see her.

Cynthia then described the July 30, 2022, incident from her perspective. She stated that she told Wendland to leave the apartment after she arrived drunk. And although Wendland initially left the building, she returned around three times. Each time, Wendland knocked on Cynthia's door and tried to explain why she was drunk, but, at some point, she went around the building and broke the window. It was not until the third time Wendland returned to Cynthia's door that Cynthia physically pushed her up the stairs and out of the apartment complex. She stated that she did this because the police were taking too long to respond, and she was concerned that Wendland was raising her voice and crying in the hallway. Cynthia said that Wendland did not leave until the police arrested her. She also stated that Kaivian was asleep in the back bedroom throughout the ordeal.

Cynthia generally explained that she maintained contact with Wendland following this incident. Almost immediately, she bailed Wendland out of jail using Wendland's mother's money. And after only a few days, she allowed Wendland to watch Kaivian while she attended a therapy session with another one of her children. Cynthia also started to discuss the fight she got into with Wendland after her car accident but was prevented from providing further details. She also expressed that she was not entirely honest with Starostka once she became her case manager in September 2022.

On April 17, 2024, the court issued an order that found Kaivian was within the meaning of § 43-247(3)(a). Specifically, the court determined the State proved by a preponderance of the evidence that (1) Cynthia was under the court's jurisdiction; (2) Cynthia failed to alleviate the issues that brought her under the court's jurisdiction; (3) Cynthia engaged in domestic violence in Kaivian's presence; (4) Cynthia continued to have ongoing contact with Wendland; and (5) Kaivian was at a risk of harm. Notably, the court dismissed the allegation that Cynthia had a history of substance abuse issues.

In making these findings, the court determined that Cynthia was in a relationship with Wendland that involved domestic violence, was deceptive regarding the nature of that relationship, continued contact with Barbosa who also had a history of domestic violence against her, lacked

- 5 -

insight into the risks associated with domestic violence, and demonstrated a lack of progress in addressing the safety risks to her children. Accordingly, the court found that placing Kaivian with Cynthia would be contrary to his health and safety and that his best interests were served by continuing his placement with DHHS.

Cynthia now appeals.

## ASSIGNMENTS OF ERROR

Restated, Cynthia assigns the juvenile court erred in finding that there was sufficient evidence to demonstrate that Kaivian was at a definite risk of future harm.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Gunner B.*, 312 Neb. 697, 980 N.W.2d 863 (2022). However, when the evidence is in conflict, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

## ANALYSIS

To obtain jurisdiction over a juvenile at the adjudication stage, the court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsection of § 43-247. *In re Interest of Lilly S. & Vincent S.*, 298 Neb. 306, 903 N.W.2d 651 (2017). Section 43-247(3)(a) outlines the basis for the juvenile court's jurisdiction and grants exclusive jurisdiction over any juvenile "who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian." *In re Interest of Lilly S. & Vincent S.*, 298 Neb. at 315, 903 N.W.2d at 660. While the State need not prove that the child has actually suffered physical harm, Nebraska case law is clear that at a minimum, the State must establish that without intervention, there is a definite risk of future harm. *Id.* The State must prove such allegations by a preponderance of the evidence. *Id.*

The Nebraska Supreme Court has stated that a child need not witness domestic violence or be in the vicinity in order to be placed at risk for harm. *Id.* For example, if a child observed the subsequent results of domestic violence or was otherwise made aware of the domestic violence, this could constitute a risk for harm to the child. *Id.* But to support adjudication, the Supreme Court has required an evidentiary nexus between a parent's fault or habits and the risk for harm to the child. *Id.*

We first note that Cynthia's assignment only concerns the court's conclusion that Kaivian was at a risk of harm. In other words, she does not contest that the State proved the other allegations within the sixth supplemental petition. Instead, she only contends there is no evidentiary nexus that links the court's findings and a definite risk of future harm to Kaivian. She essentially argues that the State failed to present sufficient evidence that Kaivian was at risk of harm because the only evidence adduced concerned two incidents of domestic violence that occurred outside of his presence. With this, she contends the evidence produced by the State fails to adequately demonstrate how those acts of domestic violence impacted Kaivian and put him at future risk.

- 6 -

We determine that Cynthia's argument misstates the evidence and largely ignores the more general risks associated with domestic violence. Beyond the two acts of domestic violence, the evidence demonstrates that Cynthia continually lied to DHHS, maintained contact with Wendland whom she understood to be a negative influence, and failed to understand how that contact put herself and Kaivian at risk. More specifically, Cynthia bailed Wendland out of jail after the first domestic violence incident, had numerous calls with Wendland while she was incarcerated after the second domestic violence incident, lied to her caseworkers about both incidents, and continued to associate with Wendland afterward.

Cynthia's relationship with Wendland poses obvious risks and her lack of comprehension of those risks is extremely concerning. Despite taking several domestic violence courses and having conversations with multiple professionals regarding the risks posed by her relationship with Wendland, Cynthia continues to maintain that relationship. She even allows Wendland to watch Kaivian alone, live at her apartment, and have contact with her other children. And while it is not definite that Cynthia and Wendland will have future incidents of domestic violence, the "court need not await certain disaster to come into fruition before taking protective steps in the interest of a minor child." *In re Interest of Lilly S. & Vincent S.*, 298 Neb. 306, 316, 903 N.W.2d 651, 660 (2017).

Beyond the obvious physical safety risks, being around a relationship plagued by domestic violence impacts a child's mental health, psychological and neurological development, and ability to form healthy relationships and establish boundaries. Therefore, as long as Cynthia is unable to comprehend the problems associated with her relationship with Wendland and the significant risks it poses to Kaivian's safety and development, he is at a definite risk of future harm. Accordingly, we determine the State presented sufficient evidence to show by a preponderance of the evidence that Kaivian was at a definite risk of future harm.

CONCLUSION

We conclude that the juvenile court did not err in finding that Kaivian was at a risk of future harm.

AFFIRMED.