IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF ISABELLA L.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF ISABELLA L., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

NATIVIDAD L., APPELLANT.

Filed March 18, 2025.    No. A-24-560.

Appeal from the Separate Juvenile Court of Lancaster County: ELISE M.W. WHITE, Judge. Affirmed.

Laura A. Lowe for appellant.

Patrick F. Condon, Lancaster County Attorney, and Aynsley G. Davis for appellee.

MOORE, PIRTLE, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Natividad L. appeals the Lancaster County juvenile court's order adjudicating his daughter, Isabella L. He contends that the juvenile court erred in: (1) finding that Isabella's testimony regarding physical abuse by Natividad was credible; (2) finding that the State met its burden in proving the allegations contained in the petition for adjudication by a preponderance of the evidence; and (3) overruling his motion to dismiss. For the reasons set forth herein, we affirm.

- 1 -

## II. STATEMENT OF FACTS

### 1. BACKGROUND

Natividad and April D. are the biological parents of Isabella, who was born in December 2010. Although Natividad and April have been engaged in a protracted dispute for custody of Isabella, Isabella had been residing with Natividad. April is not part of this appeal and will be mentioned only as necessary for context.

In February 2024, a counselor at Isabella's middle school became aware of allegations of suspected abuse of Isabella by Natividad and observed noticeable bruising on Isabella's neck. Isabella informed school officials that during an argument, Natividad shoved her, causing her to strike her neck on a doorknob. Following this disclosure, Isabella was interviewed by law enforcement and disclosed multiple other incidents of physical abuse by Natividad. Isabella alleged that Natividad had strangled her, punched her in the stomach, threatened her, and pulled her hair. Thereafter, law enforcement removed Isabella from Natividad's home and the State filed a motion for emergency temporary custody of Isabella. Isabella subsequently underwent a diagnostic interview and medical examination during which she again disclosed physical abuse by Natividad. Isabella told the medical examiner that returning to Natividad's home would make her feel unsafe and scared. On March 22, 2024, the juvenile court ordered temporary custody of Isabella to be placed with the Nebraska Department of Health and Human Services (DHHS) with physical placement of Isabella with April.

### 2. ADJUDICATION PETITION

In late March 2024, the State filed a petition alleging that Isabella was a minor child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) because she lacked proper parental care by reason of the fault or habits of Natividad and that she was in a situation dangerous to life or limb or injurious to her health or morals because: Natividad had subjected Isabella to inappropriate physical discipline and/or engaged in assaultive, threatening, intimidating, controlling, disturbing, verbally aggressive, and/or destructive behavior towards Isabella; he failed to provide a safe and stable home for Isabella; there was a previous court case involving a sibling of Isabella and Natividad's parental rights to that child were terminated; and, as a result, Isabella was at risk of harm.

### 3. ADJUDICATION HEARING

At the adjudication hearing, which was held over several days in May and June 2024, the State adduced testimony from Officer Robert Ference and Isabella. The State also offered into evidence several exhibits including certified records from Natividad's previous juvenile court case in which his parental rights to one of Isabella's siblings were terminated.

#### (a) Officer Robert Ference Testimony

Officer Ference testified that he initially met with Isabella on February 13, 2024, after receiving a report about an injury to Isabella's neck. Ference testified that he observed bruising on Isabella's neck and that Isabella told him the incident that caused the bruising had occurred several weeks prior, when Natividad pushed her, causing her to fall and hit her throat on a doorknob.

Ference testified that during this meeting, Isabella would not allow him to take a photograph of the bruising on her neck.

Ference met with Isabella again on March 22, 2024, regarding new abuse allegations that had allegedly occurred on March 17. At the time of the meeting, Ference was unaware that Isabella had left Natividad's home on March 13 and had been staying with friends. During the March 22 interview with Isabella, Ference took a picture of the bruising on Isabella's neck. According to Ference, the bruising he observed on Isabella's neck on March 22 was consistent with the same bruising he had previously observed on February 13. Based on the March 22 interview, Ference "felt that [Isabella] was in further risk of harm or injury if she was returned to [Natividad's] house." Ference testified that during his investigation, he read police reports regarding the family's history that included numerous calls to law enforcement related to Natividad and April's custody dispute and noted the similarity of Isabella's current allegation about falling and hitting her throat on a doorknob to claims made 2 years earlier by April. Ference testified that when he attempted to speak with Natividad about the allegations, Natividad denied that Isabella made any allegations and directed Ference to Natividad's attorney.

### (b) Isabella's Testimony

Isabella testified that she was 13 years old and attended middle school. Isabella testified that although she liked living with Natividad, when Natividad was upset, he "would start yelling at me" and "he would sometimes put his hands on me." Isabella testified that on one occasion Natividad pushed her, causing her to hit her neck on a doorknob, which resulted in pain and bruising. She also testified to instances when Natividad had punched her in the stomach, causing her pain; when he was driving, and he threatened to pull over and hit her; when he put a pillow over her head; and when he threatened to stab her in the eye with a fork. Isabella testified that Natividad gets mad at her on a nearly daily basis, and that when he gets mad, he hurts her "most of the time." Isabella stated that she does not feel safe at Natividad's home when he is angry. Isabella also testified that when Natividad was hurting her, he would take her phone, which scared her because she could not call for help.

Isabella testified that Natividad gets angry with her when she says she wants to spend time with April and that Natividad has told her that she would not see April until she turned 18 years old. Isabella testified that she felt like she was in the middle of her parents' custody dispute and that she wanted to be able to see April without getting in trouble. She further testified that she had been interviewed by law enforcement multiple times in prior years due to various reports of abuse and that Natividad would get mad at her when she talked to police and told her that she should not talk to the police.

### 4. MOTION TO DISMISS AND NATIVIDAD'S EVIDENCE

At the close of the State's case, Natividad moved to dismiss the State's petition, which request was overruled by the court. Natividad then presented testimony by Jessica Blake, a nurse practitioner at the child advocacy center where Isabella's interview took place, and Charles Marti, a DHHS child and family support specialist.

### (a) Jessica Blake Testimony

Blake testified that she interviewed Isabella on April 4, 2024. During that interview, she observed a mark on Isabella's throat or neck but "that area was not diagnostic of nonaccidental injury, so I was unable to diagnose it as [an] injury." Rather, she testified that her finding was that it was an "area of nonblanchable hyperpigmentation" which she stated could be consistent with bruising, but she could not say when it occurred. When Blake asked Isabella what happened to her neck, Isabella responded that "[Natividad] pushed me and then I hit the bathroom doorknob on my side." Blake also testified that Isabella reported that Natividad choked her, punched her in the stomach, and said "mean" things to her. Isabella also told Blake that when she got into trouble at Natividad's house, he would yell at her, call her names, threaten her, hit her, and "[o]ne time, we got into an argument, and he wrapped my hair around a really tight fist and said, 'Don't make me pull it[.'] He punches my stomach, shoves me to the ground, [and put a] pillow on my face. He threatened to shoot me with a paintball gun."

### (b) Charles Marti Testimony

Marti, a DHHS child and family support specialist, was assigned as the initial intake assessment worker to Isabella's case in February 2024. During an interview, Isabella told Marti that the dark mark on her neck was "from being pushed by [Natividad] in the hallway of the home and she fell to the floor and hit her neck or throat on a doorknob." Marti testified that he "found it a little bit odd that if you get pushed to the floor that you could hit your throat on a doorknob." In mid-March 2024, Marti concluded his investigation and determined that the allegations were unfounded. Although Marti was notified on March 22 that Isabella had made additional disclosures, he did not interview Isabella because she had been interviewed by law enforcement and law enforcement had decided to remove Isabella from Natividad's care; however, he observed the dark mark on Isabella's throat and stated that it appeared the same as when he saw Isabella in mid-February.

### 5. JUVENILE COURT ORDER

Following the multi-day adjudication hearing, the court found, by a preponderance of the evidence, that the State met its burden of proof and that the allegations contained in the State's petition for adjudication were true. The court also specifically found that Isabella's testimony about the physical abuse she suffered at the hands of Natividad was credible. Natividad appeals that determination.

### III. ASSIGNMENTS OF ERROR

Natividad contends that the juvenile court erred in (1) finding that Isabella's testimony regarding physical abuse by Natividad was credible, (2) finding that the State met its burden in proving the allegations contained in the petition for adjudication by a preponderance of the evidence, and (3) overruling his motion to dismiss.

## IV. STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Gunner B.*, 312 Neb. 697, 980 N.W.2d 863 (2022). However, when the evidence is in conflict, the appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

## V. ANALYSIS

### 1. CREDIBILITY OF ISABELLA'S TESTIMONY

Natividad first contends that the court erred in finding Isabella's testimony regarding physical abuse by Natividad was credible.

The standard of review for juvenile cases is de novo on the record; however, when evidence is in conflict, the appellate court may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Gunner B., supra*; *In re Interest of Quiotis C.*, 32 Neb. App. 932, 9 N.W.3d 224 (2024), *petition for further review denied* (Aug. 29, 2024), *cert. denied sub nom. Quiotis v. Nebraska*, No. 24-600, 2025 WL 299528 (U.S. Jan. 27, 2025).

Here, Natividad points out that he and April have been involved in a protracted custody dispute and that April called law enforcement numerous times alleging that Natividad was abusing Isabella, April has filed for protection orders, and April has filed for custody of Isabella. Natividad contends that April has talked to Isabella about this case in violation of the court's partial sequestration order and that Isabella's testimony was not credible due to coaching by April. However, "[o]n de novo review, we are concerned with whether the children were telling the truth, regardless of who or what initially prompted them to speak out." *In Interest of J.L.H., J.L.H. and R.H.*, 2 Neb. App. 40, 59, 507 N.W.2d 641, 653 (1993). The juvenile court observed Isabella's testimony and found her testimony to be credible. In giving weight to the juvenile court's finding that Isabella's testimony was credible, and following our de novo review of the record, we conclude that the juvenile court did not err in finding that Isabella's testimony was credible. This assignment of error fails.

### 2. BURDEN OF PROOF

Natividad's other two assignments of error can be considered together. He contends that the court erred in finding that the State met its burden in proving the allegations contained in the petition for adjudication by a preponderance of the evidence and in overruling his motion to dismiss because the evidence was insufficient to prove by a preponderance of the evidence that Isabella was abused or neglected.

The purpose of the adjudication phase is to protect the interests of the child. *In re Interest of Prince R.*, 308 Neb. 415, 954 N.W.2d 294 (2021). To obtain jurisdiction over a juvenile at the adjudication stage, the court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsection of § 43-247. *In re Interest of Prince R., supra*.

Section 43-247(3)(a) sets forth numerous grounds by which the juvenile court could take jurisdiction over a juvenile. *In re Interest of Jeremy U. et al.*, 304 Neb. 734, 936 N.W.2d 733 (2020). The ground relevant to this case is that the juvenile "lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian." See § 43-247(3)(a). The Nebraska Supreme Court has held that "proper parental care" includes

> providing a home, support, subsistence, education, and other care necessary for the health, morals, and well-being of the child. . . . It commands that the child not be placed in situations dangerous to life or limb, and not be permitted to engage in activities injurious to his health or morals.

*In re Interest of Prince R*., 308 Neb. at 425-26, 954 N.W.2d at 301, quoting *State v. Metteer*, 203 Neb. 515, 279 N.W.2d 374 (1979). To show that a juvenile lacks proper parental care, the State is not required to prove that the child has actually suffered physical harm, but the State must establish that, without intervention, there is a definite risk of future harm. *In re Interest of Prince R., supra*.

The Nebraska Supreme Court recently repeated that a claim under § 43-247(3)(a) that a juvenile "lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian" should be analyzed through a two-step inquiry:

> The first step is to determine if the juvenile is lacking proper parental care, whether such care is being provided by a parent, a guardian, or a custodian. If a juvenile is not lacking that type of care (and . . . there is no definite risk of harm), adjudication under this provision of § 43-247(3)(a) is improper. If, on the other hand, the juvenile is lacking such care, the court should proceed to the second step: Does that condition result from the fault or habits of the juvenile's parent, guardian, or custodian? If the answer to that question is also yes, then the juvenile court should take jurisdiction of the juvenile and proceed to a proper disposition.

*In re Interest of Prince R.*, 308 Neb. 415, 426, 954 N.W.2d 294, 302 (2021), quoting *In re Interest of Jeremy U. et al.*, 304 Neb. 734, 936 N.W.2d 722 (2020).

At the adjudication stage, in order for a juvenile court to assume jurisdiction of minor children under § 43-247(3)(a), the State must prove the allegations of the petition by a preponderance of the evidence. *In re Interest of Xandria P.*, 311 Neb. 591, 973 N.W.2d 692 (2022). A preponderance of the evidence is the equivalent of the greater weight of the evidence, which means evidence sufficient to make a claim more likely true than not true. *In re Interest of Prince R., supra*.

Here, Natividad argues that the juvenile court erred in finding Isabella's testimony was credible, and that without her testimony, the State did not adduce sufficient evidence to establish that Isabella was a child within the meaning of § 43-247(3)(a). In determining that the State had proved the allegations in the adjudication petition by a preponderance of the evidence, the juvenile court found Isabella's testimony to be credible. As we noted in the previous section, we give weight to the fact that the juvenile court heard and observed Isabella's testimony.

In analyzing the two steps in determining whether Isabella lacked proper parental care, we find that the evidence regarding both steps was met by the State. More specifically, based upon

our de novo review, we find that the State proved, by a preponderance of the evidence, that Natividad had subjected Isabella to inappropriate physical discipline including hitting her, punching her, and choking her; that he engaged in assaultive, threatening, intimidating, controlling, disturbing, verbally aggressive, and/or destructive behavior towards Isabella by threatening to pull over his car and hit her and by threatening to stab her in the eye with a fork; and that he failed to provide a safe and stable home for Isabella by locking her out of the house during arguments and confiscating her phone so that she could not call for help. Further, the State presented evidence that Natividad had his parental rights to Isabella's sibling terminated. We find this evidence supports a finding that Isabella is lacking in care from Natividad due to his assaultive behavior, which is dangerous to Isabella, and that this condition results from the fault or habits of Natividad. Based on the forgoing, we find that the juvenile court did not err in finding that sufficient evidence existed to adjudicate Isabella under § 43-247(3)(a) and in denying Natividad's motion to dismiss.

## VI. CONCLUSION

Having considered and rejected Natividad's assigned errors, we affirm the juvenile court's order adjudicating Isabella.

AFFIRMED.